UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                  :

DAVID R. KITTAY, TRUSTEE,                :        08 Civ. 7421 (RPP)

                  Plaintiff,           :

                                                  :

            - against -               :

JOSEPH KORFF,                         :

                    Defendant.       :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES, COSTS AND PRE-JUDGMENT INTEREST**

**STORCH AMINI & MUNVES PC**
**Attorneys for Plaintiff**
**Two Grand Central Tower, 25th Floor**
**140 East 45th Street**
**New York, NY 10017**
**(212) 490-4100**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS ......................................................................................................2

    A.    Nature of the Action ................................................................................................2

    B.    Relevant Procedural History.....................................................................................3

          1.    The Adversary Proceeding Is Commenced And The Reference Is Withdrawn ...3

          2.    Korff's Counsel Withdraws and Korff Appears *pro se* Until the Eve of Trial ....3

          3.    The Court Sets A Trial Date ..............................................................................5

          4.    Korff Retains New Counsel A Week Before Trial .............................................6

    C.    The Verdict Rendered..............................................................................................8

    D.    The Trustee's Attorneys' Fees and Costs Are Reasonable...........................................8

ARGUMENT...........................................................................................................................9

I.    THE JURY'S FINDING THAT KORFF RECEIVED THE TRANSFER
WITH INTENT TO HINDER, DELAY OR DEFRAUD MANDATES
AN AWARD OF ATTORNEYS' FEES UNDER DCL § 276-a...............................................9

    A.    Governing Legal Standard Under DCL § 276-a..........................................................9

    B.    The Trustee's Legal Fees Are Reasonable and Should be Awarded in Full ...............10

II.    THE TRUSTEE IS ENTITLED TO AN AWARD OF
PRE-JUDGMENT INTEREST UNDER NEW YORK LAW................................................15

CONCLUSION .....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

Arbor Hill Concerned Citizens Neighborhood Assoc.  v. County of Albany
    522 F.3d 182 (2d Cir. 2008) ...........................................................................10, 11

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000) .......................................................................................15

Building Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC,
    2010 WL 1438117 (S.D.N.Y. April 9, 2010). .........................................................11

Carey v. Crescenzi,
    923 F.2d 18, 21-22 (2d Cir. 1991) .............................................................................10

Farbotko v. Clinton County,
    433 F.3d 204, 211 n.11 (2d Cir. 2005) ......................................................................11

FCC v. Mizuho Medy Co. Ltd.,
    07cv189 (S.D. Cal. Jan. 29, 2009) .............................................................................12

Hassett v. Goetzmann,
    10 F. Supp.2d 181 (N.D.N.Y. 1998) ....................................................................10, 14

In re All Am. Petroleum Corp.,
    259 B.R.6, 20-21(Bankr. E.D.N.Y. 2001) .......................................................15, 16 n. 7

In re The Cassandra Group,
    338 B.R. 583 (Bankr. S.D.N.Y. 2006) ..............................................................15, 16 n. 7

In re Harvard Knitwear, Inc.,
    193 B.R. 398 (Bankr. E.D.N.Y. 1996) .......................................................................15

In re Kovler,
    249 B.R. 238 (Bankr. S.D.N.Y. 2000)........................................................................10

In re The Cassandra Group,
    338 B.R. 583 (Bankr. S.D.N.Y. 2006)........................................................................15

In re Weeden,
    206 B.R. 449 (Bankr. W.D.N.Y. 2004) .....................................................................10

Johnson v. Georgia Highway Express, Inc.,
    488 F.2d 714 (5th Cir. 1974) .....................................................................................11

Kahlil v. Original Old Homestead Rest., Inc.,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009) .................................................................. 13

Mallis v. Bankers Trust Co.,
    717 F.2d 683 (2d Cir. 1983) ............................................................................... 15

Mugavero v. Arms Acres, Inc.,
    2010 WL 451045 (S.D.N.Y. Feb. 9, 2010) ......................................................... 13

Palacios v. Am. Academy of Personal Training, LLC, N.Y. Slip. Op.
    (Sup. Ct. N.Y. County Mar. 9, 2010) ................................................................. 12

Penn. v. Del. Valley Citizens' Council for Clean Air,
    478 U.S. 546, 106 S. Ct. 3088 (1986) ................................................................ 13

Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,
    818 F.2d 278 (2d Cir.1987) ................................................................................ 14

RTC Mortgage Trust 1995-S/N1 v. Sopher,
    171 F. Supp.2d 192 (S.D.N.Y. 2001) ................................................................. 10

Shamis v. Ambassador Factors Corp.,
    1995-CV-9818 (RWS), 2001 WL 25720 (S.D.N.Y. Jan. 10, 2001) ...................... 15

**Statutes and Other Authorities**

C.P.L.R. § 5001(a) .................................................................................................. 15, 17

C.P.L.R. § 5001(b) .................................................................................................. 15, 17

C.P.L.R. § 5002 ....................................................................................................... 16, 17

C.P.L.R. § 5004 ....................................................................................................... 15, 17

FED. R. CIV. P. 54(d) ................................................................................................. 1

FED. R. CIV. P. 59(e) ................................................................................................. 1

New York Debtor-Creditor Law § 276-a ............................................... 1, 8, 9, 10, 14

New York Debtor-Creditor Law § 273, 274, 275 and 276 ...................................... 1, 3, 8

Plaintiff, David R. Kittay, Trustee ("Plaintiff" or "Trustee"), by his attorneys Storch Amini & Munves PC ("SAM"), submits this memorandum of law and the accompanying Declaration of Lita Beth Wright in support of Plaintiff's motion for attorneys' fees against Defendant Joseph Korff ("Korff") pursuant to New York Debtor-Creditor Law § 276-a and FED. R. CIV. P. 54(d), and for pre-judgment interest pursuant to FED. R. CIV. P. 59(e).

## PRELIMINARY STATEMENT

New York Debtor-Creditor Law ("DCL") § 276-a mandates an award of attorneys' fees to a plaintiff who succeeds in proving that a transferee of a fraudulent conveyance received it with intent to hinder, delay or defraud past or future creditors of the Debtor.  Following a four-day trial, the jury found Korff liable under New York Debtor and Creditor Law ("DCL") §§ 273, 274, 275 (constructive fraud) and 276 (actual intent to delay, hinder or defraud creditors).  Thus, the jury awarded the Trustee the full amount of the $300,000.00 fraudulent transfer that the Debtor, Douglas E. Palermo (the "Debtor") made to Korff on July 30, 2004.  In connection with its finding of liability under the Trustee's DCL § 276 claim, the jury also found that "Korff also had actual intent to defraud [the Debtor's] creditors."  Wright Decl., Ex. C at pp. 710-11.  As a matter of statutory prescription in New York, the latter finding entitles the Trustee to an award of attorneys' fees under DCL § 276-a.

As demonstrated below, and in the accompanying Wright Declaration, Plaintiff's attorneys' fees are reasonable.  Not only was the work performed by the Trustee's attorneys necessary to the prosecution of the action, but, as shown below and in the Wright Declaration, Defendants' eve of trial retention of new counsel substantially increased the Trustee's costs of trying this case.

As discussed more fully below, the Trustee is also entitled to an award of pre-judgment interest on the jury's verdict under New York law.  As will be shown, having uniformly been brought under state law for to damage to the Debtor's property interests, each of the claims embodied in the jury's verdict also qualifies in full for pre-judgment interest.  Such interest should therefore be included in the judgment entered in the Trustee's favor.

Accordingly, Plaintiff's motion for attorneys' fees and pre-judgment interest should be granted in all respects.

## STATEMENT OF FACTS

**A.     Nature of the Action**

The complaint in this action was filed on January 7, 2008[1] in the United States Bankruptcy Court for the Southern District of New York to recover from Korff a $300,000.00 fraudulent conveyance from the Debtor.  Wright Decl., Ex. D.  As was proven at trial, on or about July 29, 2004, the Debtor unlawfully diverted a portion of a fee paid for advisory services the Debtor rendered, in connection with the sale of property located at 455 Central Park West in Manhattan, to Korff (the "Transfer"). Wright Decl., Exs. C at pp 253-54, E and F.  When the 455 Central Park West transaction closed on July 29, 2004, the Debtor was undisputedly insolvent at the time of the Transfer to Korff and the funds transferred to Korff otherwise would have been available to satisfy the Debtor's outstanding obligations to his creditors (the "Transfer"). Wright Decl., Ex. G.

As the evidence at trial conclusively established, at the time the Transfer was made, the Debtor and the entities that had contracted to pay his commission were subject to restraining

---

[1] The circumstances surrounding the filing of the Initial Adversary Complaint on October 12, 2007 are addressed fully in the Trustee's November 18, 2010 memorandum of law and supporting papers filed in opposition to Korff's motion for reconsideration of this Court's Order denying his eve of trial motion to dismiss on statute of limitations grounds, dated November 24, 2010.  See Docket No. 63.

2

orders and could not pay the commission to the Debtor.  Wright Decl., Exs. C at pp. 281-82, H and I.  The evidence further showed that the Transfer was both actually and constructively fraudulent under DCL §§ 273, 274, 275 and 276. Wright Decl., Ex. C at pp. 710-11.

**B.**     **Relevant Procedural History**

 **1.  The Adversary Proceeding Is Commenced And the Reference Is Withdrawn**

Korff filed an answer to the complaint, through his then counsel Cole, Shotz, Meisel, Forman & Leonard, P.A. ("Cole Shotz"), on or about February 20, 2008. Wright Decl., Ex. J. The case proceeded before the Judge Hardin and a discovery schedule was implemented with a final pretrial conference originally set for September 4, 2008. Wright Decl. Ex. K.  Discovery was not completed on the schedule originally implemented by Judge Hardin.

On or about August 7, 2008, Korff moved to withdraw the reference from the Bankruptcy Court. Wright Decl. Ex. L.  On December 10, 2008, the Honorable Kenneth M. Karas granted Korff's motion to withdraw the reference and directed that such withdrawal would take effect once discovery had been completed.  Id. at p. 5.   Judge Karas' grant of the motion was made "on the condition that no dispositive motions will be filed before trial." Id.  Discovery was complete, at the latest, by March 9, 2009 when the District Court placed this matter on its calendar for a Rule 16 conference. See Docket No. 3.

 **2.  Korff's Counsel Withdraws and Korff Appears *pro se* Until the Eve of Trial**

After the reference was withdrawn, on October 5, 2009, Cole Schotz moved to withdraw as counsel. See Docket No. 10.  On December 1, 2009, Cole Schotz's motion was granted.  See Docket No. 16.  Over the next several months, Korff, formerly a practicing tax attorney, decided to, and did appear *pro se* in this action.

At the January 14, 2010 status conference before Judge Karas, the first status conference following Cole Shotz's withdrawal, Korff failed to appear in person or through counsel and Judge Karas issued an order commanding Korff to appear at the next status conference, which the Court scheduled for February 11, 2010. See Docket No. 17.  On February 9, 2010, Korff requested an adjournment of the February 11, 2010 status conference due to Korff's work on an unrelated matter. See Docket No. 18.  Judge Karas granted Korff's request and rescheduled the status conference for March 10, 2010.  Id.  Counsel for the Trustee appeared for the March 10, 2010 court conference, but Korff failed to appear at the conference and the Trustee was given leave to file an Order to Show Cause seeking default. Wright Decl., Ex. M.  Korff wrote to the Court on that same day indicating that he had arrived late for the conference and was seeking to resolve his failure to appear with counsel for the Trustee.  Wright Decl., Ex. N.  The Trustee ultimately agreed to withdraw his request to file a motion for default due to Korff's failure to appear at the March 10, 2010 conference, and the Court sent a new date of May 13, 2010 for the status conference. See Docket No. 19.

Ahead of the May 13, 2010 status conference, Korff once again sought an adjournment due to Korff's work on an unrelated matter. See Docket No. 20.  Judge Karas granted the adjournment and set the conference for July 7, 2010.   That conference was ultimately adjourned to July 20, 2010.  All told, Cole Shotz's withdrawal, Korff's repeated requests for adjournments, and Korff's failures to appear for scheduled compliance conferences delayed the prosecution of this action by nearly a year.

On July 20, 2010, the parties appeared before Judge Karas for a status conference.  See Docket No. 21.  At the July 20, 2010 conference, Korff began appearing with counsel, Andrea Marcus, whose admission to the United States District Court for the Southern District of New

York was purportedly pending.  By Order dated July 20, 2010, Judge Karas set a deadline of September 30, 2010 to submit a joint pretrial order, with a final pretrial conference to be held on October 28, 2010.  Id.  Counsel for the Trustee requested that the September 30, 2010 deadline to submit the pretrial order be adjourned to October 7, 2010, because of difficulties obtaining the required materials from Korff.  See Docket No. 22.

### 3.  The Court Sets A Trial Date

Prior to the October 7, 2010 deadline for submitting the joint pretrial order, the case was reassigned to this Court.  See Docket No. 24.  By Order dated October 1, 2010, this Court directed that trial commence on October 25, 2010, with a joint pretrial order, *voir dire* requests, requests to charge and any *in limine* motions filed by October 7, 2010.  Id.  In conjunction with the parties' preparation of the pretrial order, within days of this matter being set for trial, Korff produced new documents concerning alleged payments and advances made to the Debtor prior to the Transfer.  See Docket No. 28.  These documents had never been produced before in this litigation, despite the fact that they were clearly called for by the Turstee's discovery demands.  Id.  Korff's belated production caused the Trustee to make a motion *in limine* to compel Korff's deposition regarding the newly produced discovery, or preclude him from using those documents at trial.  See Docket No. 38.  The Court directed Korff to appear for a deposition concerning the newly produced documents.  Id.

Counsel for the Trustee timely filed his proposed pretrial order, *voir dire* requests, requests to charge and a motion *in limine* on the October 7, 2010 filing date.  Korff and his counsel failed to meet this deadline and instead made an application to adjourn the trial, which was denied.  See Docket No. 25.  Korff subsequently made two more letter applications on

October 8 and 13, 2010 to adjourn the trial, and requested dismissal, for the very first time in this action, on estoppel grounds, all of which were denied. See Docket Nos. 39 and 42.

### 4.   Korff Retains New Counsel A Week Before Trial

Having failed in his attempts to adjourn the trial, on or about October 18, 2010, exactly one week before trial, Korff retained the 400 attorney law firm of Schiff Hardin LLP ("Schiff Hardin") to represent him.   The very next day, Korff's newly retained counsel made Korff's fourth request to adjourn the trial in the span of thirteen days, this time because of his last minute retention of new counsel, and requested (for the first time ever in the case) dismissal of this action on statute of limitations grounds.  See Docket No. 49.[2]  In addition to his last minute dispositive motion, by the same letter, Korff's new counsel also made multiple motions *in limine* nearly two weeks after the deadline for filing such motions set by the Court.  Id.

Between Schiff Hardin's retention on October 18, 2010 and the commencement of trial, Korff submitted no less than five letter briefs covering a wide array of substantive issues, all of which required the Trustee to respond. These belated filings and multiple applications caused the Trustee's counsel to expend substantial time and resources responding to them.  Korff's wave of briefing diverted the Trustee's attention away from trial preparation to researching and responding to at least the following issues:

- the adjournment of the trial;

- the purported collateral estoppel effect of a decision in another adversary proceeding related to the Debtor;

---

[2] Although preserved as an affirmative defense in his answer, neither Cole Shotz nor Korff, an attorney himself, had raised the statute of limitations defense as grounds for dismissal of this action prior to his eve of trial letter motion. Korff made this motion to dismiss despite Judge Karas' December 10, 2008 Order granting his motion to withdraw the reference "on the condition that no dispositive motions would be filed before trial."  Wright Decl., Ex. L.

- the use of the July 9, 2007 decision of Judge Hardin denying the Debtor a discharge as evidence at trial;

- the use of depositions, taken in other adversary proceedings related to the Debtor, at trial;

- the Trustee's ability to offer his bookkeeper's lay opinion testimony at trial;

- the timeliness of the Trustee's 11 U.S.C. § 548 claims, even though the Trustee had already voluntarily withdrawn them;

- authenticity, relevance and hearsay objections to nearly all of the Trustee's trial exhibits that Korff raised the day before trial began;

- the issuance of a trial subpoena by alternative process to the Debtor due to the Debtor's repeated attempts to evade service; and

- for the first time ever in this case, dismissal  on statute of limitations grounds.[3]

Moreover, at trial, Korff took the position that the Transfer was made for consideration given to the Debtor in the form of loans and advances dating as far back as 1996. Wright Decl., Exs. C at pp. 552, 640 and O.  Korff had not advanced this position in discovery and had failed to produce the vast majority of the documents evidencing the loans and advances that Korff allegedly provided to the Debtor.  As Korff failed to advance this theory in discovery and the underlying documents had not been produced in advance of trial, this Court ordered the production of the books, ledgers and tax returns relevant to the purported loans and advances during the trial. Wright Decl., Ex. C at pp. 19-21.

Korff's inclusion of documents not produced in discovery on his pre-trial exhibit list and certain discrepancies in his proposed demonstrative exhibits necessitated an additional deposition of Korff and the deposition of his bookkeeper, Ms. Azeda Kasem, just prior to trial. See Docket

---

[3] On October 25, 2010, prior to beginning trial, the Court issued its ruling on the record denying Korff's motion to dismiss the complaint as time-barred and holding that the doctrine of equitable tolling applied. Wright Decl., Ex. C at p. 4.

No. 38 and Wright Decl., Ex. P at p. 94. The continued deposition of Korff on October 14, 2010 was taken prior to Korff's disclosure of thousands of additional pages of books, records and tax returns produced during the course of trial itself. Accordingly, Korff's failures in discovery and his belated motion practice and applications to this Court required counsel for the Trustee to review of thousands of pages of newly produced discovery materials during the trial, conduct two depositions immediately preceding the trial, and respond to a multitude of untimely applications to this Court. All of this activity dramatically increased the time and staffing required to try this action.

## C.   **The Verdict Rendered**

Despite the difficulties created by Korff's discovery failures and onslaught of motions the week before trial, the case proceeded to trial from October 25, 2010 to October 28, 2010. After trial, the jury returned a verdict finding that the Trustee had proven, by a preponderance of the evidence, his claims under DCL §§ 273, 274, 275 and 276. Wright Decl., Ex. C at pp. 710-11. The jury also found that by receiving and engineering the Transfer Korff had actual intent to defraud the Debtor's creditors under DCL § 276-a.[4] Id.

By Notice of Settlement, dated November 3, 2010, the Trustee settled a proposed judgment on notice to Korff. See Docket No. 55. In response, Korff moved for reconsideration of this Court's decision just prior to trial to dismiss this case on statute of limitations grounds. See Docket No. 56. Korff's motion for reconsideration is fully briefed and sub judice.

---

[4] At trial, the Trustee made an application under FED. R. CIV. P. 15 to amend the complaint in this action to include a claim for attorneys' fees under DCL § 276-a. Wright Dec., Ex. C at pp. 576-77. This Court included an interrogatory concerning DCL § 276-a on its Verdict Sheet, and the jury found that Korff had actual intent to defraud the Debtor's creditors. Id. at pp. 710-11.

8

**D.**     **The Trustee's Attorneys' Fees and Costs Are Reasonable**

As of January 31, 2011, the Trustee has incurred $312,601.21 in attorneys' fees and costs prosecuting this action. These fees encompass services rendered by SAM in conjunction with this matter and include time spend conducting discovery before the United States Bankruptcy Court for the Southern District of New York, opposing a motion to withdraw the reference from that court, participating in a Court-Ordered Mediation, opposing a motion to withdraw filed by Korff's former counsel, preparing for and attending status conferences before Judge Karas, preparing for and conducting a four-day trial before this Court, filing of a Notice of Settlement of Proposed Judgment, opposing Korff's post-trial motion for reconsideration, and drafting this motion. Wright Decl., ¶¶ 22-43. As discussed below and in the accompanying Wright Declaration, the fees and costs incurred by SAM in prosecuting this action are reasonable and should be charged to Korff pursuant to DCL § 276-a.

**ARGUMENT**

**I.**

**THE JURY'S FINDING THAT KORFF RECEIVED THE TRANSFER
WITH INTENT TO HINDER, DELAY OR DEFRAUD MANDATES
AN AWARD OF ATTORNEYS' FEES UNDER DCL § 276-a**

**A.**     **Governing Legal Standard Under DCL § 276-a**

New York DCL § 276-a provides, in relevant part, as follows:

> In an action or special proceeding brought by . . . trustee in bankruptcy . . . to set aside a conveyance by a debtor, where such conveyance *is found to have been made by the debtor and received by the transferee with actual intent*, as distinguished from intent presumed in law, *to hinder, delay or defraud either present or future creditors, in which action or special proceeding the . . . trustee in bankruptcy . . . shall recover judgment*, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the . . . trustee in bankruptcy . . . in such action or special proceeding, and . . . trustee in bankruptcy . . . shall have judgment

9

> therefor against the debtor and the transferee who are defendants in
> addition to the other relief granted by the judgment. The fee so
> fixed shall be without prejudice to any agreement, express or
> implied, between the . . . trustee in bankruptcy . . . and his attorney
> with respect to the compensation of such attorney.

Id. (emphasis added). Thus, for a court to award attorneys' fees against a defendant transferee

under Section 276-a, there must be a finding of actual intent to defraud on the part of both the

transferor and the transferee. See Carey v. Crescenzi, 923 F.2d 18, 21-22 (2d Cir. 1991)

(remanding case to District Court to make a determination regarding actual fraud and articulating

the standard under Section 276-a). "If actual intent to defraud is established, Section 276-a

expressly mandates that the Court shall fix the reasonable attorney's fees of the creditor and that

the creditor shall have judgment therefor against the debtor and the transferee." In re Kovler,

249 B.R. 238, 245 (Bankr. S.D.N.Y. 2000) (citation and quotation omitted); see also RTC

Mortgage Trust 1995-S/N1 v. Sopher, 171 F. Supp.2d 192, 202 (S.D.N.Y. 2001) ("Thus, § 276-a

provides for attorneys' fees in the event a party proves that a transfer is made and received with

actual intent.") (citation and quotation omitted); Hassett v. Goetzmann, 10 F. Supp.2d 181, 190

(N.D.N.Y. 1998) (finding actual intent by transferee and awarding attorneys' fees under § 276-

a); In re Weeden, 206 B.R. 449, 464 (Bankr. W.D.N.Y. 2004) (same).

By its October 28, 2010 verdict, the jury found that Korff had actual intent to defraud the

Debtor's creditors. Wright Decl., Ex. C at pp. 710-11. This finding mandates that the Trustee

receive judgment against Korff for the reasonable attorneys' fees that the Trustee incurred in

prosecuting this action, in addition to judgment for the full amount of the Transfer and, as

detailed below in Point II infra, pre-judgment interest on the Transfer.

10

**B.     The Trustee's Legal Fees Are Reasonable and Should be Awarded in Full**

After determining that a party is entitled to recover attorneys' fees under DCL § 276-a, a court must then "fix the reasonable attorneys' fees" for litigating that action.  The Second Circuit in <u>Arbor Hill Concerned Citizens Neighborhood Assoc.  v. County of Albany</u>, shifted away from the "lodestar" method of determining reasonable attorneys' fees in favor of  reviewing "all of the case-specific variables that [the Second Circuit] and other courts have  identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate" to determine the "presumptively reasonable fee."   522 F.3d 182,190 (2d Cir. 2008).

Following the <u>Arbor Hill</u> decision, courts determine the presumptively reasonable  fee in a four step process: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award."  <u>Building Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC</u>, 2010 WL 1438117 at * 2 (S.D.N.Y. April 9, 2010).

To determine the first factor, the reasonable hourly rate, courts should look at the rate a "paying client would be willing to pay" and what is known as the "Johnson factors."   <u>Id.</u> at 189-90; <u>see</u> <u>also</u> <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).   The "Johnson factors" are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent;   (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship; and (12) awards in similar cases.

11

<u>Arbor Hill</u>, 522 F.3d at 186, n.3 (<u>citing</u> <u>Johnson</u>, 488 F.2d at 717-19). The "reasonable hourly rate is then used to calculate the 'presumptively reasonable fee' by multiplying the rate by the number of hours reasonably expended." <u>Building Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC</u>, 2010 WL 1438117 at * 2 (S.D.N.Y. April 9, 2010); <u>see also</u> <u>Farbotko v. Clinton County</u>, 433 F.3d 204, 211 n.11 (2d Cir. 2005) (awarding attorneys' fees based on the current uniform rate).

The rates outlined in the accompanying Wright Declaration are reasonable and in line with the rates charged by firms in New York City of comparable size and reputation. <u>See</u> Wright Decl., ¶¶ 5-10. Moreover, the qualifications and experience of the attorney and paralegals involved in the litigation are detailed in the accompanying declaration. <u>See</u> <u>id.</u> at ¶¶ 11-21. Recently, in an attorneys' fee motion before the Supreme Court of the State of New York, County of New York, SAM's hourly rates were found to be reasonable. <u>See</u> <u>Palacios v. Am. Academy of Personal Training, LLC</u>, N.Y. Slip. Op. (Sup. Ct. N.Y. County Mar. 9, 2010) (finding that SAM's rates were appropriate based on their attorneys' level of experience and geographic location); <u>see also</u> <u>FCC v. Mizuho Medy Co. Ltd.</u>, 07cv189 (S.D. Cal. Jan. 29, 2009) (same).[5]

The hours expended by SAM's attorneys and support staff were reasonable given the amount of work performed and the results obtained. The trial was scheduled on expedited notice. With only a week before trial, Defendant retained Schiff Hardin, LLP, a multi-office law firm with over four hundred attorneys.[6] <u>See</u> Docket No. 49; Wright Decl., Ex. ¶ 35. Following Defendant's last minute retention of Schiff Hardin, Defendant filed almost daily letter briefs, produced additional discovery including depositions, altered its defenses, attempted to revise the

---

[5] Copies of these decisions are annexed to the Wright Declaration as Exhibits Q and R respectively.
[6] Indeed, as compared to the rates charged by Schiff Hardin, SAM's rates are reasonable and consistent.

pre-trial stipulation and submitted revised jury charges and proposed *vior dire*.  Id.  This

necessitated SAM staffing the matter with additional attorneys and paralegals.

The second factor to be considered is the reasonable amount of hours expended by SAM.

The billing records submitted with the application detail the work performed by each attorney or

paralegal, the date performed and the time expended and support the reasonable amount of work

performed.  Billing records maintained in a manner similar to SAM's have been found to be

reasonable.  See Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 477

(S.D.N.Y. 2009) (reviewing cases in the district regarding billing entries).  SAM's billing records

demonstrate that the hours expended by each attorney or paralegal were reasonable for the tasks

performed.

The third factor is the multiplication of the reasonable hourly rates of SAM by the

number of hours expended to obtain the presumptively reasonable fee. Based on the foregoing

analysis the presumptively reasonable fee is $249,964.50.   There is a strong presumption that the

initially calculated fee is "reasonable." See Mugavero v. Arms Acres, Inc., 2010 WL 451045 at

*4  (S.D.N.Y. Feb. 9, 2010) (citing Penn. v. Del. Valley Citizens' Council for Clean Air, 478

U.S. 546, 565, 106 S. Ct. 3088 (1986)).

In this case, the presumptively reasonable fee should be entitled to a further presumption

as "reasonable" because, as detailed more fully in the accompanying Wright Declaration, the

Trustee has eliminated over 70.8 hours of attorney and paralegal time – totaling a $23,381.50 or

9.4 % reduction in fees incurred by the Trustee – from the fees sought in this application. Wright

Decl., ¶¶ 8-9.  Such reductions were made to account for, inter alia, any arguable duplication of

efforts between or among associates getting up to speed in the matter when the case was transferred from one associate to another.[7] No further adjustments should be made.

As detailed in the Wright Declaration, the Trustee incurred a total of $62,637.71 in costs and expenses in prosecution of this matter.  SAM charged these expenses to Plaintiff at their actual cost with no mark-up.  All such expenses were reasonably necessary and required. Although not expressly provided for in New York D.C.L. § 276-a, awarding Plaintiff the costs and expenses it incurred in prosecuting the action is consistent with the purpose of the statute. See Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir.1987) (awarding reasonable expenses that are "incidental and necessary" to the prevailing party when the statute provides for recovery of attorneys' fees); Hassett v. Goetzmann, 1998 WL 480840, at *8  (N.D.N.Y. Aug. 14, 1998) (finding that "an **award** of costs is consistent with the purpose of § 276-a inasmuch as it transfers the costs of an action under the **DCL** to those whose conduct brought about the litigation").

Finally, with respect to the fourth factor, there should not be any adjustment to the presumptively reasonable fee amount other than those already made by the Trustee.  See Wright Decl., ¶¶ 8-9. Although Plaintiff voluntarily discontinued his fraudulent conveyance claims under the U.S. Bankruptcy Code, 11 U.S.C. § 548 prior to the trial, a reduction of Plaintiff's attorneys' fees, beyond those detailed above, is not warranted.   The Trustee obtained a verdict of liability on each of its remaining claims against Korff, including the claim under N.Y. D.C.L. §276-a.  The Trustee's fraudulent conveyance claims under the U.S. Bankruptcy Code and N.Y.

---

[7] Specifically, the Trustee has eliminated the 35 hours expended by the first two associates assigned to this case, Jonathan Bardavid and Stacy Yeung, as well as the 18 hours expended by Bijan Amini, an officer of SAM.  The Trustee only seeks recovery of fees incurred for the principal associate who worked on the matter, Bonnie A. Tucker, Lita Beth Wright, an officer of SAM who joined the trial team less than a week before trial on account of the increased work load occasioned by Korff's retention of Schiff Hardin, Thomas Monahan, a law clerk whose admission to the New York State bar is expected on February 14, 2011 who also joined the trial team less than a week before trial due to the increased work load, and paralegals who billed more than $1000 worth of time or assisted in trial preparation.  Wright Decl. ¶¶ 8-9.

Debtor-Creditor Law are substantially the same and were based on exactly the same factual predicate. As a result, the discontinuance of the Section 548 claims did not change the Trustee's trial strategy; nor did it narrow in any way the Trustee's preparation for the trial.

Accordingly, this Court should issue an award of attorneys' fees and costs on behalf of Plaintiff in the amount of $312,601.21.

## II.

### THE TRUSTEE IS ENTITLED TO AN AWARD OF <u>PRE-JUDGMENT INTEREST UNDER NEW YORK LAW</u>

In avoidance actions initiated by bankruptcy trustees, pre-judgment interest is routinely awarded, <u>see</u> In re Harvard Knitwear, Inc., 193 B.R. 398, 399 (Bankr. E.D.N.Y. 1996), especially where, as here, the avoidance claims arise under New York law. New York law provides for an award of pre-judgment interest where a defendant's "act or omission" has "depriv[ed] or otherwise interefer[ed] with title to, or possession or enjoyment of, property ...." NEW YORK CIVIL PRACTICE LAW AND RULES ("C.P.L.R.") § 5001(a). Courts in this Circuit "applying § 5001(a) have without qualification awarded interest as a matter of right whenever any tortious conduct causes damage to tangible or intangible property interests." <u>Baker v. Dorfman</u>, 239 F.3d 415, 425 (2d Cir. 2000) (<u>quoting</u> Mallis v. Bankers Trust Co., 717 F.2d 683, 695 (2d Cir. 1983)). Indeed, fraudulent conveyance has been recognized as "but one species of tortious conduct for which the Second Circuit has held that prejudgment interest is recoverable." <u>Shamis v. Ambassador Factors Corp.</u>, 1995-CV-9818 (RWS), 2001 WL 25720, at *6 (S.D.N.Y. Jan. 10, 2001); <u>see also</u> In re The Cassandra Group, 338 B.R. 583, 600 (Bankr. S.D.N.Y. 2006).

Where, as here, the underlying avoidance claims are "predicated on New York substantive law, New York law is the proper source from which to determine the appropriate interest rate to be applied." In re Cassandra, 338 B.R. at 600. The statutory rate of pre-judgment

interest applicable here is nine percent per annum.  C.P.L.R. § 5004.  In setting the date from

which interest is to be calculated, New York law fixes the date as "the earliest ascertainable date

the cause of action existed[.]"  C.P.L.R. § 5001(b).  In fraudulent transfer cases, courts in this

Circuit have computed pre-judgment interest from the date of the transfer.  See e.g., In re All

Am. Petroleum Corp., 259 B.R.6, 20-21(Bankr. E.D.N.Y. 2001) (awarding pre-judgment interest

in a fraudulent transfer action from the date of the transfer to the date judgment was entered).[8]

The Trustee is also entitled to pre-judgment interest, at a rate of nine percent per annum, from

the jury's October 28, 2010 verdict until the date of entry of final judgment in this action.  See

C.P.L.R. § 5002.

Korff received the Transfer on July 29, 2004.  Wright Decl., Ex. F.  Since that date, the

creditors of the Debtor's estate have been deprived of the title, possession and enjoyment of the

Transfer.  The jury found that Korff had actual intent to defraud the Debtor's creditors when he

received the Transfer. Wright Decl., Ex. C at pp. 710-11.  Given Korff's active participation in

the fraudulent transfer, and the intent behind the New York statutory scheme governing the

Trustee's fraudulent transfer action, pre-judgment interest is appropriate and should be computed

from the July 29, 2004 date of the Transfer until judgment is entered in this action.  Accordingly,

the Trustee respectfully submits that judgment should be entered in the amount of the Transfer,

together with pre-judgment interest computed at nine percent per annum from July 29, 2004

through the date of entry of final judgment in this action, along with the Trustee's reasonable

attorneys' fees and costs in prosecuting this action.

---

[8] The Trustee notes that some courts in this Circuit have calculated pre-judgment interest in fraudulent transfer
actions from the date the action is commenced by the trustee or a demand is made. See e.g., In re Cassandra, 338
B.R. at 600.  However, the Trustee respectfully submits that calculating pre-judgment interest from the date of the
transfer is more consistent with New York's statutory scheme and would serve to compensate the creditors of the
Debtor's estate for the actual damages caused by the fraudulent scheme that the evidence suggests Korff was an
active participant in. See e.g., C.P.L.R. § 5001(b); In re All Am. Petroleum, 259 B.R. at 21.

## <u>CONCLUSION</u>

For the reasons set forth herein, this Court should issue an order awarding Plaintiff

$312,601.21 for his reasonable attorneys' fees and costs in prosecuting this action, pre-judgment

interest pursuant to C.P.L.R. § 5001, 5002 and 5004, and for such other and further relief as this

Court deems just and equitable.

Dated: New York, New York
      February 3, 2011

                               STORCH AMINI & MUNVES PC


                             By: /s/ Lita Beth Wright
                                  Bijan Amini (BA 3533)
                                  Lita Beth Wright (LW 0442)
                                  Bonnie A. Tucker (BT 8340)
                                  Two Grand Central Tower
                                  140 East 45th Street, 25th Floor
                                  New York, New York 10017
                                  (212) 490-4100
                                  Attorneys for Plaintiff