UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:


DOUGLAS E. PALERMO,

                               Debtor,                          **OPINION AND ORDER**
----------------------------------------------------------X
DAVID R. KITTAY, TRUSTEE                        08 CV 7421 (RPP)
                                Plaintiff,

              -against-

JOSEPH KORFF,

                          Defendant,
----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**


    **I.  Introduction**

        On November 4, 2010, Defendant Joseph Korff ("Defendant" or "Korff") submitted two

motions – 1) a motion for reconsideration of this Court's October 25, 2010 Order ("Order")

denying Defendant's motion to dismiss on statute of limitations grounds; and 2) a motion for an

award to the Defendant of attorneys fees and litigation costs based on alleged "intentional

misrepresentations to this Court by Plaintiff's counsel that led to the issuance of such Order."

(Def. Memo 1.)

        For the foregoing reasons, both of the Defendant's motions are denied.


    **II.  Background**

        On the eve of trial, Defendant, by way of newly retained counsel Carl Obedier of Schiff

Hardin LLP, moved to dismiss the complaint in this action on statute of limitations grounds. In a

letter dated October 19, 2010, Defendant claimed that Plaintiff's fraudulent conveyance claims

under Section 544(b) of the Bankruptcy Code were time barred and that the action should be

dismissed. On October 22, 2010, the Court held argument on this issue. On October 25, 2010,

prior to the commencement of trial, the Court issued its ruling denying Korff's motion to dismiss

the complaint as time barred and holding that the doctrine of equitable tolling applied.[1]

Section 546(a) of the Bankruptcy Code, which sets forth the limitation periods of claims

under Section 544(b), provides that an action or proceeding under section 544, 545, 547, 548, or

553 of the Code may not be commenced after the *earlier* of either

1) The later of –

    A.  2 years after the entry of the order for relief; or

    B.  1 year after the appointment or election of the first trustee OR

2) The time the case is closed or dismissed.

In this case, the order for relief was entered on the Debtor's petition date, October 14,

2005, and the trustee was appointed on October 15, 2005. Thus, any claim by the Trustee under

Section 544(b) had to be filed no later than October 14, 2007 – two years after the order for relief

---

[1] Defendant's October 19, 2010 Letter to this Court attempts to paint a picture of Korff as a pro se litigant who was forced into retaining counsel on an emergency basis on the eve of an unanticipated trial. Korff answered the complaint in this action on February 20, 2008, with Cole Schotz appearing as his counsel. Bankr. Docket (08-8204) No. 4. Cole Schotz also represented the Debtor, Douglas Palermo, in these adversary proceedings. On October 5, 2009, Cole Schotz moved for an order granting the firm leave to withdraw as counsel. In support of its motion, Cole Schotz submitted a Declaration by Laurence May, a member of the firm, stating that Korff and Cole Schotz were engaged in disputes regarding the amount of legal fees owed by Korff to Cole Shotz for its representation both in this action, and in a second unrelated bankruptcy proceeding. (May Decl. ¶ 6.) Cole Schotz's motion was granted by the Court on December 1, 2009. Korff was represented by Andrea Marcus, Esq. at the pre-trial conference before Judge Karas in July 2010 at which time a schedule for the submission of the pre-trial order and other documents was set for September 2010, and later adjourned to October 7, 2010. In early October 2010, this case was transferred to this Court as ready for trial and a trial date of October 25, 2010 was set. Defendant knew since October 2009 that he would need new counsel and learned by July 2010 that trial would be set for October of that year. Nonetheless, Korff waited until seven days before the start of trial to retain Carl Oberdier of Schiff Hardin LLP, the same counsel who represented the McLean entities in another Palermo adversary proceeding stemming from the initial Palermo adversary proceeding brought by this Trustee.

– in order for it to fall within the statute of limitations period. The Trustee properly commenced the initial adversary proceeding in Bankruptcy Court on October 12, 2007 – two days before the statute of limitations period ended. That proceeding named the Debtor Douglas Palermo, Daniel McLean, MCL Companies of Chicago, PMD Company, Brian Farley, Phillip Herlihy, John Livingston, SB Housing, LLC and Joseph Korff as Defendants. (Compl. ¶ 46.)

On October 18 and 19 and November 12, 13, 14, 16, and 17, 2007, a process server attempted to serve a true copy of the summons, complaint, and notice of pretrial conference in the adversary proceeding upon Korff. Bankr. Docket (07-08310) No. 5, 13. These attempts were unsuccessful. Id. On November 17, 2007, the process server served a true copy of the aforementioned papers by personally serving Gene "Doe," "the concierge, a person of suitable age and discretion" at Defendant's Park Avenue apartment building. Bankr. Docket (07-08310) No. 13. On November 19, 2007, the process server served another true copy of the papers upon Korff by first class mail pursuant to N.Y.C.P.L.R. § 308(2). Bankr. Docket (07-08310) No. 13. Proof of service with the Court was filed on November 26, 2007. Pursuant to N.Y.C.P.L.R. § 308(2), service upon an individual is complete 10 days after filing this proof of service. Accordingly, service on the Defendant was completed on December 6, 2007.

A pre-trial conference was held on November 27, 2007 before the Honorable Judge Hardin of the Bankruptcy Court. Here, Judge Hardin expressed concern about having a single adversary proceeding against multiple defendants, "some of whom may have not been involved in some of the fraudulent conveyances." (Compl. ¶ 49); (Transcript of Nov. 27, 2007 Hearing ("Tr. 11/27/07") at 4.) Judge Hardin adjourned the conference until December 11, 2007 and ordered the parties to meet and confer regarding a procedure for separating the initial adversary

proceedings into separate proceedings. (Compl. ¶ 51); (Tr. 11/27/07 at 18.) Korff was not present

at this November 27 pre-trial conference.

A second conference was held on December 11, 2007. Korff was neither present nor

represented by counsel at this conference and had not yet appeared in the action. (Transcript of

December 11, 2007 Hearing ("Tr. 12/11/07") at 4.) At this conference, Trustee's counsel,

Jonathan Bardavid, advised the court of its intention to amend the complaint in the initial

adversary proceeding to include claims against the Debtor only and to file separate complaints

for each of the individual defendants which would relate back to the original complaint for

statute of limitations purposes. Judge Hardin allowed Plaintiff until January 7, 2008 to file those

complaints. (Compl. ¶¶ 53-56). An amended complaint naming the Debtor as the sole defendant

in the initial adversary proceeding was filed on January 7, 2008. Bankr. Docket (07-8310) No.

15. On the same day, Plaintiff filed a complaint against Korff alone, Bankr. Docket (08-8204)

No. 1, and complaints against the other adversary defendants.

Almost three years later, on October 22, 2010, this Court heard argument from the parties

on the statute of limitations issue. Defense maintained that the complaint in this action was time-

barred and could not relate back to the original complaint on the statute of limitations issue

because relation back could only apply in the context of a single proceeding. (Transcript of Oct.

22, 2010 Hearing ("Tr. 10/22/10") at 7.) Defense maintained that relation back was inapplicable

in this instance because the Trustee wanted the complaint against Korff to relate back to a

complaint in a different proceeding with a different number – the initial adversary proceeding.

(Id.) Defense also maintained that Korff was not a party to any agreement regarding the tolling

of the statute of limitations and that he was never given notice of any such agreement. (Id. at 8-

9.) On October 22, 2010, neither the Trustee nor the Defendant referenced the transcript of the

December 11, 2007 conference. (Id. at 10.) The Court reserved judgment and instructed the parties to appear for trial on October 25, 2010.

On October 25, 2010, prior to the commencement of trial, the Court issued its ruling denying the Defendant's motion to dismiss (the "Order"). While the complaint naming Korff as the sole Defendant was filed outside the statute of limitations period, the Court held that equitable tolling had preserved the Plaintiff's otherwise time-barred claims. In coming to this conclusion, this Court relied in part on the Trustee's representations in the complaint as to what occurred during the previously untranscribed December 11, 2007 conference and on the applicability of equitable tolling in Family Golf Centers, Inc. v. Acushnet Co., 288 B.R. 701, 704 (Bankr. S.D.N.Y. 2003). In Family Golf, the Plaintiff initially commenced a single adversary proceeding against eighty defendants. Two defendants moved to dismiss the adversary complaint and the Court granted the motion without prejudice and directed the Plaintiffs to re-file the claim in a new proceeding. The Court tolled the statute of limitations because the Plaintiff had not sat on his rights, timely commenced the first proceeding and no prejudice was suffered by the defendant. Id. At 703-706.

After the Court issued its ruling, Trustee's counsel represented to the Court that she had been able to obtain a transcript of the December 11, 2007 conference and that "it [was] consistent with what the complaint alleges." (Transcript of Oct. 25, 2010 Hearing ("Tr. 10/25/10") at 9.)[2] Subsequently, Defendant placed an objection on the record stating that he made no agreement to have the complaint in this case relate back to the initial adversary proceeding and that he had no notice of any such agreement or of the December 11 conference.

---

[2] The December 11, 2007 conference transcript was not available on PACER until October 25, 2010. The November 27, 2007 conference transcript was not available until November 2, 2010. Bankr. Docket (07-8310) No. 49,50.

Consequently, he argued, he was prejudiced in a way that the defendants in <u>Family Golf</u> were not. The Court noted that since Korff had been served with notice of the nature of the November 27, 2007 conference, Korff's absence from the December 11, 2007 conference was of his own volition and that he was primarily to blame for his absence. (Tr. 10/25/10 at 9.)

      After issuing this ruling, the Court proceeded to hold a four day jury-trial which ended on October 28, 2010. The jury rendered a verdict for the Trustee pursuant to New York Debtor and Creditor Law §§ 273, 274, 275, 276 and 276(a). Due to the pendency of this motion, judgment has not been entered by the Court.

      On November 4, 2010, Defendant moved for reconsideration of this Court's Order denying the motion to dismiss pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, and for Defendant's attorneys fees and litigation costs pursuant to 28 U.S.C. §1927 and this Court's inherent authority. Defendant argues that the Court was "misled by Plaintiff into holding that equitable tolling applied, when it did not." (Def. Mem. 2). Specifically, Defendant asserts that he obtained a copy of the December 11 conference transcript after trial had concluded and that Trustee's counsel misrepresented its contents to the Court. Defendant maintains that Judge Hardin did not "hold that the new complaints would relate back to the initial proceeding." Instead, Korff argues, Hardin "instructed Plaintiff to obtain a 'consent order'…containing the 'specific provision' that the new Complaints will relate back to the filing of this one." (Def. Mem. 2) (emphasis omitted). According to Defendant, Trustee's counsel "flatly disregarded" a specific instruction of the Court to obtain a consent order and instead "voluntarily dismissed Defendant from the original action without any order of the bankruptcy court providing for relation back." (<u>Id.</u>) Thus, Defendant argues reconsideration of this Court's order denying his motion to dismiss is appropriate because Defense counsel was

finally able to obtain a copy of the December 11, 2007 transcript, and because, as he contends, this transcript shows that Trustee's counsel misrepresented that proceeding to this Court and flatly disregarded an order from the bankruptcy judge.

### III. Discussion

#### a. Motion for Reconsideration

Defendant's motion for reconsideration of this Court's October 25 Order is denied because Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure are not applicable to the October 25 Order and because Korff has not met the stringent requirements for reconsideration under Local Civil Rule 6.3.

##### i. Reconsideration under Fed. R. Civ. P. 59(e) and 60(b) is inappropriate

As a threshold matter, Rule 60(b) applies only to "final" judgments. The standard test for whether a judgment is "final" for Rule 60(b) purposes is "whether the judgment is sufficiently 'final' to be appealed." Alvarez v. American Airlines Inc., No. 98 Civ. 1027, 2000 WL 145746 at *1 (S.D.N.Y. Feb. 8, 2000). A judgment is final such that it may be appealed if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945). The Court's October 25 denial of the motion to dismiss did not end the litigation on the merits. Rather, that decision allowed the litigation to continue to trial. Because the order was not "final" and thus not a "final judgment," Rule 60(b) is inapplicable in this case.

In contrast to Rule 60(b), Rule 59(e) permits modification of a "judgment," which is defined by Rule 54(a) as a "decree [or] any order from which an appeal lies." Because a denial of a motion to dismiss is an interlocutory order from which no appeal lies, see 28 U.S.C. § 1292(a), a motion pursuant to 59(e) to modify this order is procedurally improper.

7

Thus because the October 25 Order is neither a "judgment" nor a "final judgment" neither Rule 59(e) nor 60(b) would be appropriately applied in this instance. Accordingly, the only ground available for Korff to move for reconsideration is under Local Civil Rule 6.3.

### ii.   Reconsideration under Local Civil Rule 6.3

The standard for reconsideration under Local Civil Rule 6.3 is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is not an invitation for parties "to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." de los Santos v. Fingerson, No. 97 Civ. 3972, 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1990). The motion "cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been *considered*." Koehler v. Bank of Bermuda Ltd., No. M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. Sept. 21, 2009). Thus, reconsideration under Local Rule 6.3 is available only so a court may correct for clear error, prevent manifest injustice, or review in light of newly available law or evidence. See Parrish v. Sollecito, 253 F.Supp.2d 713, 715 (S.D.N.Y. 2003).

In his papers moving for reconsideration, Korff also submitted his own declaration, a declaration by Laurence May, a member of the firm Cole, Schotz, Meiesel, Forman & Leonard, P.A., and a declaration by his attorney, Carl Oberdier which included seven exhibits, one of which was a copy of the December 11, 2007 conference transcript. Local Civil Rule 6.3 explicitly states that "[n]o affidavits shall be filed by any party unless directed by the court."

While the Court never directed the Defendant to submit these additional papers, it will

nevertheless consider those submissions. (Def. Reply Mem. 3 n.5.)

**<u>Defendant has not shown that reconsideration is necessary to correct "clear error."</u>**

Korff maintains that reconsideration of the Order is required because the Court acted in

"clear error" in disposing of his motion by relying on hearsay statements in the Plaintiff's

complaint regarding the December 11, 2007 conference. First, it should be noted that the Court

did not solely rely on Plaintiff's allegation in the Complaint in coming to its conclusion. The

parties submitted briefing on the issue and were provided the opportunity for oral argument and

it is after considering all the available information that the Court issued its October 25 Order.

Second, Defendant asserts that a court may not consider hearsay in disposing of a substantive

motion. (Def. Mem. 5). For these propositions, Korff cites four cases, all of which deal with a

district court's consideration of hearsay on a summary judgment motion.[3] As counsel must be

aware, the same standard does not apply when considering a motion to dismiss. Rather, because

the Court must accept as true all factual statements alleged in the complaint for the purposes of a

motion to dismiss, "whether the statements…might constitute inadmissible hearsay when relied

upon for the truth of the matters asserted is simply irrelevant." <u>DLJ Mortg. Capital, Inc. v.</u>

<u>Kontogiannis</u>, 726 F.Supp.2d 225, 235 (E.D.N.Y. 2010). For the purpose of a motion to dismiss,

---

[3] <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 219-20, 22-23 (2d Cir. 2004) (requirement in summary judgment
motions that the "affiant have personal knowledge and be competent to testify to maters in the affidavit also means
that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to
create a genuine issue for trial."); <u>Rowe Entertainment, Inc. v. The William Morris Agency</u>, No. 98 Civ. 8272, 2005
WL 22833 *6 n.20, *45, *46, *47 n. 131, *57 n 158, *59, *80 n.215 & *216 (S.D.N.Y. Jan. 5, 2005) (disregarding
hearsay testimony offered by plaintiff to demonstrate a genuine issue of fact in granting a summary judgment
motion). <u>DeSimone v. JP Morgan/Chase Bank</u>, No. 02 Civ. 7039, 2004 WL 2978011 *3 (S.D.N.Y. Dec. 22, 2004)
(same); <u>Schoenfeld v. Worldwide Dreams LLC</u>, No. 98 Civ. 7093, 2000 WL 28159 *6 (S.D.N.Y. Jan. 13, 2000)
(same).

the Court "accept[s] the truth of the factual allegations pled and construe[s] those facts in the light most favorable to the plaintiff." U.S. v. All Right Title & Interest, 830 F.Supp. 750, 756 (S.D.N.Y. 1993). Likewise, the Court does not assess the "admissibility or weight that should be afforded to evidence." Id. Consequently, the Court's reliance on the hearsay allegations in the Complaint – specifically, that, because of Judge Hardin's concern about having one adversary proceeding involving multiple defendants, the Court and parties agreed that the initial adversary proceeding would be amended and separate adversary proceedings, which would relate back to the original date for statute of limitations purposes, would be filed (Compl. ¶¶ 46-59) – was not in "clear error."

**<u>Defendant has not shown that reconsideration is necessary to correct "manifest injustice."</u>**

Defendant asserts that the Court's "misapprehension of the contents of [the December 11] transcript based on Plaintiff's misrepresentations, led it into 'clear legal error,' working 'manifest injustice.'" (Def. Mem. 11.) Defendant makes two interdependent arguments supporting his claim of "manifest injustice": 1) that Trustee's counsel made "unrefuted misrepresentations of the December 11 Transcript," (Def. Reply Mem. 5); and 2) that the Court's application of equitable tolling was in error. (Def. Mem. 20; Def. Reply Mem. 7.) Both these arguments will be addressed in turn.

<u>Plaintiff's Counsel Did Not Misrepresent the December 11 Conference</u>

Defendant claims that Trustee's representation, both in the Complaint and in open court, that Judge Hardin held that for the purposes of the statute of limitations the date of filing for the additional adversary proceedings would relate back to the date of the initial adversary proceeding, was an intentional distortion of the facts. (Def. Mem. 1-3.) Rather, Defendant

argues, Judge Hardin explicitly instructed the Trustee to obtain a consent order containing a specific provision that the new complaints would relate back to the filing of the first. (Id. at 2.) Because Korff never consented to such an agreement, he claims that relation back cannot apply to him and consequently that the case against him should have been dismissed before trial commenced.

While the Court did not have access to the December 11, 2007 conference transcript prior to the denial of Defendant's motion to dismiss, a review of the transcript indicates that it is not clear that Judge Hardin ordered that a consent order be signed by the parties. The pertinent parts of the December 11, 2007 conference read as follows:

After noting the appearances of counsel, Judge Hardin opened the proceeding on December 11, 2007.

* * * *

THE COURT: Okay, we were going to consider further the question of whether there should be or not separate adversary proceedings. You all talked about it?

MR. BARDAVID: I think the Trustee has the same concerns we had last time; however, in the interest of trying to work this out, I talked to my client in [sic] the adversaries and I think we thought that it would not be matter of delay to divide up the case.

THE COURT: Okay.

MR. BARDAVID: The proposal would be one adversary proceeding against the Debtor and then to divide, I believe, into four other adversary proceedings based upon the groups of Defendants….The logical groups that we came up with would be the McLean Defendants…the PMD Defendants…and then two other adversary proceedings against Joseph Korff and John Livingston.

11

(Tr. 12/11/07 at 3-4.)

* * * *

THE COURT: Okay, as a mechanical matter then, I take it you would now file separate Complaints?

MR. BARDAVID: Yes, the understanding being, of course, that the state of limitation would have been satisfied from filing the first Complaint.

THE COURT: Relating back to the initial complaint, that's fine. How soon can you do that? File separate complaints?

MR. BARDAVID: With the Court's indulgence I would ask for January 7th just because the holiday and people are in and out of my office and my client – also it gives my adversaries a little bit more time to answer after the holidays are concluded.

THE COURT: Okay, I think that's all right. January 7 to file and two weeks after that to file answers. You all know and you basically have the Complaints so the two weeks should be more than adequate. Fair enough?

(Id. at 6.)

* * * *

The Judge then went on to discuss a discovery schedule, id. at 7-9, after which he concluded,

THE COURT: …So, do be very mindful of that. All right, well thank you all very much.

MR. BARDAVID: Thank you, Your Honor.

MR. BARISH: Thank you, Your Honor.

THE COURT: Thank you. By the way, I guess once the new Complaints are filed, you should do an appropriate consent order terminating this initial adversary proceeding, but with a

specific provision that the – I don't know quite how you word it, but *that the new Complaints will relate back to the filing of this one, all right*?

     MR. BARDAVID: It is my intention, Your Honor, to just amend the Complaint in this action so that it will only cost the – to avoid having to pay for another action.

     THE COURT: Say again?

     MR. BARDAVID: My intention was just to amend the Complaint in this action to eliminate – or would be to move – to proceed under this caption against Mr. Palermo and then file the other.

     THE COURT: *All right, I see. Okay, so this action would not be terminated; this would just be amended to relate only to one set of Defendants?*

     MR. BARDAVID: Yes, that's correct, Your Honor.

     THE COURT: *Okay, that's fine. Very good.* Thank you.

(Id. at 10) (emphasis added).

* * * *

     A review of this transcript indicates that when Judge Hardin asked the parties to submit a consent order he initially believed that the initial adversary proceeding would be terminated and then the new complaints filed. When he was advised of Mr. Bardavid's alternative proposal to amend the initial Palermo adversary proceeding and file additional complaints rather than to terminate it, however, Judge Hardin did not indicate he still required consent of the parties. Thus, a reasonable reading of this transcript indicates that Judge Hardin's previous command to the parties regarding a consent order was limited to the situation where the original Palermo adversary proceeding would be terminated and new complaints filed and not, as in this instance, when the proceeding would be continued but amended to sever the defendants into separate

13

adversary proceedings. In any event, a reading of the complete transcript makes clear that Judge Hardin intended that for statute of limitations purposes the severed adversary proceedings would relate back to the filing date of the initial adversary proceeding.

The transcript from the November 27, 2007 conference further highlights Judge Hardin's intent. Here Mr. Bardavid expressed his concern that severing the defendants may lead to statute of limitations problems.

* * * *

MR. BARDAVID: …. On top of that, the concern would be that we filed to preserve the statute of limitations defense that this gets dismissed and we have to file separately to the extent that –

THE COURT: Well, the statute of limitations will not be a problem because you have – to the extent that this Complaint was timely as to any of these people, a refiling will be timely as well. So that should not be a –that will not be an issue.

* * * *

Thus, a review of both the November 27, 2007 and December 11, 2007 conference transcripts – conferences at which Mr. Oberdier was present, albeit representing a different defendant – indicates that Judge Hardin intended for the separate adversary proceedings to relate back to the initial adversary proceeding for statute of limitations purposes. Consequently, it is evident that Trustee's counsel did not mischaracterize either the December 11, 2007 conference or Judge Hardin's intent.

<u>The Court's application of equitable tolling does not rise to "manifest injustice"</u>

This Court's decision that the doctrine of equitable tolling applied to Judge Hardin's order to file the new complaint by January 7, 2008 does not rise to the level of "manifest

14

injustice," which is defined as "[a] direct, obvious, and observable error in a trial court, such as a defendant's guilty plea that is involuntary or is based on a plea agreement that the prosecution has rescinded." Black's Law Dictionary (9th Ed. 2009).

Equitable tolling is a doctrine that "permits courts to extend a statute of limitation on a case-by case basis to prevent inequity." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). It has been "allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading within the period of limitations." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). In Young v. United States, 535 U.S. 43, 50-51 (2002), the Supreme Court counseled that equitable tolling is consistent with the fundamental goals of bankruptcy law.

Based on the information presented by the parties as of October 25, 2010 – namely, briefings, oral arguments, and case documents including the Complaint – this Court held that equitable tolling was applicable in this situation to preserve the timeliness of the complaint against Korff. Relying on the similarities between the facts in this case and those in Family Golf Centers, Inc. v. Acushnet Co., 288 B.R. 701, 704 (Bankr. S.D.N.Y. 2003), this Court held that the Plaintiff had not sat on his rights, had timely commenced the initial adversary proceeding, and that there was no prejudice suffered by the Defendant in as much as the claims against Korff in the multiple defendant initial adversary proceeding were the same as those alleged in the complaint later filed on the date set by Judge Hardin against Korff alone.[4]

---

[4] Korff also puts forth additional arguments not previously argued on this issue. He claims, for example, that that Trustee has failed to carry his burden of proving "rare and exceptional circumstances" required for equitable tolling, that the Trustee did not exercise the "requisite 'care and diligence' during the alleged tolling period", that equitable tolling is applied "even more restrictively to bankruptcy trustees," that "Family Golf does not apply" in this case, that equitable tolling is "not available to cure 'defective pleadings,'" and that "there is no special 'no harm no foul' rule in misjoinder cases." (Def. Mem. 13-20.) These are entirely new arguments that are inappropriately raised under a motion for reconsideration. Reconsideration under Local Rule 6.3 is not an invitation for the parties to "treat the

Moreover, the newly available transcripts of the November 27, 2007 and December 11, 2007 conferences show that the Korff complaint is also saved from timeliness concerns by the relation back doctrine of Rule 15(c) of the Federal Rule of Civil Procedure. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, states that "[a]n amendment to a pleading relates back to the date of the original pleading when…the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Here again, there is no claim that the claims against Korff in the initial adversary proceeding are different from those alleged in the complaint against Korff alone. In fact, a comparison of the two complaints indicates that the claims against Korff are identical. Because the complaint is labeled a "complaint" does not mean it isn't an "amended complaint" for statute of limitations purposes. It contains the same and no new claims against the Defendant.  The conference transcripts make clear that Judge Hardin's concern about the original adversary proceeding was the number of Defendants joined in one proceeding. Thus, in order to accommodate that concern, the Trustee and counsel for the defendants agreed that the case would be severed into four different adversary proceedings. Defendant's characterization of the complaint in this action as a "different action" and "different proceeding" is misplaced for the reason that it is clear that the Korff complaint arose out of the exact same allegations against Korff in the initial adversary proceeding. See Briggs v. GEICO General Insurance Co., No. 06 Civ. 0055, 2006 WL 1897210 (D. Colo. July 10, 2006) (finding that a complaint filed after the

---

court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling." de los Santos v. Fingerson, No. 97 Civ. 3972, 1998 WL 778781, at *1 (S.D.N.Y. Nov. 12, 1998). The purpose of Local Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decisions and then plugging the gaps of a lost motion with additional matters." Scott v. City of N.Y., No. 02 Civ. 9530, 2009 WL 3010593, at *1 (S.D.N.Y. Sept. 21, 2009).

statute of limitations period following a court order directing severance relates back to the filing of the original complaint for statute of limitations purposes). This Korff complaint is an "amended complaint," and the fact that this complaint was filed under a different docket number as a "complaint" does not make it a newly commenced action. See id.

For the aforementioned reasons, the application of equitable tolling by this Court does not rise to the level of "manifest injustice."

**Defendant has not shown that reconsideration is necessary in light of "newly available evidence."**

Defendant's final claim is that the December 11, 2007 transcript is "plainly newly available" evidence, "which shatters Plaintiff's claim to equitable tolling." (Def. Reply Mem. 3.) Putting aside the question of whether or not the transcript constitutes "newly available evidence," a review of its contents indicates that the Trustee did not "flagrantly misrepresent" Judge Hardin's position. Thus, reconsideration of this Court's October 25 Order is not warranted.

### iii.   Defendant's Local Civil Rule 6.3 Motion for Reconsideration Fails

Because Defendant has failed to show that this Court needs to correct clear error or manifest injustice or reconsider its order due to newly available law or evidence, Defendant fails to meet the stringent requirements for reconsideration under Local Civil Rule 6.3 and accordingly, his motion is denied.

### b.  Defendant's Motion for Attorneys' Fees and Litigation Costs

Defendant also moves pursuant to 28 U.S.C. § 1927 and this Court's inherent authority to award Defendant his attorneys' fees and litigation costs based on misrepresentations to this Court by Plaintiff's counsel that led to the issuance of the October 25 Order.

Because the Court denies Defendant's motion for reconsideration and specifically finds that Plaintiff did not "flagrantly misrepresent" the December 11, 2007 transcript, Defendant's motion for sanctions is also denied.

### IV. Conclusion

For the above stated reasons, Defendant's motions for reconsideration and sanctions are denied and judgment for the Trustee will be entered. Plaintiff is to submit a proposed judgment, including any applications for prejudgment interest to the Court by February 14, 2011 on three days notice to the Defendant. The Court will rule on Plaintiff's motion for attorneys' fees, received on February 4, 2011, after the Defendant responds on or before February 18, 2011 as requested in the Defendant's letter dated November 4, 2010 and received today.


SO ORDERED


Dated: New York, New York

February 4, 2011


Robert P. Patterson, Jr.

U.S.D.J.

18

**Copies of this Order have been sent to:**

*Counsel for Plaintiff:*
**Lita Beth Wright**
Storch, Amimi & Munves, P.C.,
2 Grand Central Tower, 25th Floor
New York, NY 10017
(212) 490-4100
Fax: (212) 490-4208

**Bonnie Alison Tucker**
Storch Amini & Munves, P.C.
2 Grand Central Tower,
140 East 45th Street
25th Flr.
New York, NY 10017
(212) 490-4100

*Counsel for Defendant:*
**Carl W. Oberdier**
Schiff Hardin LLP
900 Third Avenue
New York, NY 10022
(212)753-5000
Fax: (212)753-5044

19