UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID R. KITTAY, | |
| Plaintiff, | Case No. 08 CV 7421 (RPP) |
| -v- | |
| JOSEPH KORFF, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Carl W. Oberdier (CO-4150)
coberdier@schiffhardin.com
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

Andrea Marcus (AM-1994)
Andrea.marcus@gmail.com
c/o Arc Development LLC
250 Park Avenue, Suite 501
New York, New York 10177
Telephone: 203-767-2580
Facsimile: (212) 702-5807

*Counsel for Defendant Joseph Korff*

Defendant Joseph Korff respectfully submits this memorandum of law in opposition to Plaintiff's motion for attorneys' fees and costs ("Motion" or "Pl. Mem.")).

## INTRODUCTION

Plaintiff seeks attorneys fees and costs under Section 276-a of the New York Debtor & Creditor Law ("DCL") that are triple what he is obligated to pay his attorneys under their retention agreement. That retention agreement, which has already been approved and "so ordered" by the Bankruptcy Court as reasonable, entitles Plaintiff's counsel to fees of $100,000. Yet Plaintiff seeks fees and costs of $312,601, which, in addition to the excessive pre-judgment interest he seeks, would result in a judgment of almost $800,000 on a jury verdict of only $300,000. Plaintiff cites absolutely no precedent for such an excessive award of fees and interest.

There are numerous additional reasons why Plaintiff's fee application is inflated. First, Plaintiff claims reimbursement for his accountant's fees of $33,395.48. *See* Declaration of Lita Beth Wright ("Wright Dec.") n.2 & Ex. S. Plaintiff provides no statutory or case authority for recovering consulting fees – Section 276-a provides only for "attorneys fees." Second, under no circumstances should Plaintiff recover fees incurred in connection with his frivolous, unsuccessful efforts to taint the trial by, among other things:

- Attempting to introduce into evidence Judge Hardin's decision from the Debtor's non-dischargeability proceeding, to which Mr. Korff was not a party.

- Attempting to introduce into evidence deposition transcripts from the same proceeding and others to which Mr. Korff was not a party.

- Offering expert testimony from an accounting expert whom Plaintiff had never identified in accordance with Fed.R.Civ.P. 26(a)(2).

- Forcing Mr. Korff's counsel to depose this expert as a "fact witness," then withdrawing his testimony entirely after the deposition demonstrated that he had no admissible factual knowledge.

More importantly, Plaintiff's failure to seek attorneys fees in his Complaint, or even to seek leave to amend his Complaint until October 2010 until after closing his case at trial, bars him from seeking them now. Courts in this District follow the majority rule that attorneys fees are special damages required to be pled in the Complaint under Fed.R.Civ.P. 9(g). To the extent that Mr. Korff is required to show prejudice from Plaintiff's failure to plead his claim, he can easily do so on several grounds. Plaintiff's fee application more than doubles the size of Mr. Korff's potential ultimate liability, and such substantial increases in liability have been held to be prejudicial *per se*. *See Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712 (4th Cir. 1983) ("substantial increase in the defendant's potential ultimate liability" constitutes prejudice that will bar a belated assertion of an unpleaded claim). Moreover, Plaintiff's fee claim greatly increases the strategic importance of the jury's finding of actual fraud, which did not figure as prominently into Mr. Korff's trial strategy as it would have had he known that a finding of actual fraud could lead to a doubling of the judgment against him.[1]

Finally, the linchpin for Plaintiff's motion – the jury's finding of actual fraud – is subject to serious doubt, as this Court itself expressly recognized before reserving judgment on Plaintiff's motion to amend his complaint to seek attorneys fees. As set forth below, Plaintiff proffered no evidence to demonstrate, as Section 276-a requires, that the challenged transfer was "received by [Mr. Korff] with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." The Second Circuit has set a very high bar for meeting this requirement. For example, the Second Circuit has held that allegations that a transferee participated in a scheme to be repaid from funds that it knew were acquired

---

[1] Mr. Korff assumed at trial that the element of actual fraud was essentially superfluous, since Plaintiff could recover no more upon proving actual fraud than if he merely proved his claims under Sections 273-275 of the DCL, which have no actual intent requirement.

fraudulently by the debtor were insufficient even to state a claim.  *See Sharp Int'l Corp. v. State Street Bank (In re Sharp Int'l)*, 403 F.3d 43 (2d Cir. 2005).  Indeed, even where (*a*) the transferor acted with fraudulent intent, (*b*) the transferee acted in "bad faith," and (*c*) the transferee "was aware of [the transferor's] intent to defraud, the transferee was not liable for attorneys fees under Section 276-a because the evidence was insufficient to show that the transferee had actual intent to defraud.  *Ostashko v. Ostashko*, 2002 WL 32068357 at *27 (E.D.N.Y. Dec. 12, 2001), *aff'd*, 79 Fed.Appx. 492, 2003 WL 22477929 (2d Cir. 2003).

Indeed, over Mr. Korff's objection, the Court refused even to instruct the jury that it was required to find that Mr. Korff had actual intent to defraud Palermo's creditors.  The Court did not give any Section 276-a instruction, but in its Section 276 instruction, instructed the jury only that it was required to find:

> Third, that Mr. Korff *knew or should of known* from the facts and circumstances surrounding the transaction *that Mr. Palermo had the actual intent* in arranging the transaction to hinder or defraud his creditors."

Declaration of Carl W. Oberdier ("Oberdier Dec.") Ex. C (Trial Transcript excerpts) at 696-698. This instruction does not comport with the Second Circuit's requirement for a finding of actual intent by Mr. Korff – knowledge or constructive knowledge of Mr. Palermo's intent is insufficient as a matter of law.  Indeed, this instruction permitted the jury to find precisely the sort of knowledge of Mr. Palermo's intent that the Court in *Ostashko* explicitly rejected as insufficient.

Mr. Korff will submit a motion for JNOV and/or new trial by March 17, 2011, within the time permitted by Fed.R.Civ.P. 59 and 60, and respectfully requests that, unless the Court is inclined to deny Plaintiff's Motion outright, it reserve judgment on such Motion pending disposition of Mr. Korff's motion for JNOV and/or new trial.

**ARGUMENT**

I.   **Plaintiff May Not Recover More Than The Amount Of Fees Owed**
     **To His Counsel Under Their Court-Approved Retention Agreement**

While seeking over $312,000 (and counting) in fees and costs based on his counsels'

hourly rates, Plaintiff ignores that his counsel was not retained or paid in this case on an hourly

rate basis, but instead on a contingency fee basis under which counsel receives 33% of any

recovery. *See In re Douglas E. Palermo*, Case No. 05 B 25081 (Bankr. S.D.N.Y.) [Docket No.

61]. This retention agreement was expressly approved by the Bankruptcy Court as reasonable.

*Id.* [Doc. No. 63]. Plaintiff thus seeks a windfall of about triple the fees he actually agreed to

and incurred. Obviously, Plaintiff is not entitled to reimbursement for more fees than he actually

incurred. Indeed, this principle is expressly stated in the leading case on "reasonable attorneys

fees" that Plaintiff cites: *Johnson v. Georgia Highway Express, Inc.*, 488 F,2d 714, 718 (5th Cir

1974) (Pl. Mem. 11) ("***In no event, however, should the litigant be awarded a fee greater than***

***he is contractually bound to pay***. (emphasis added)).

Research has revealed only one bankruptcy case in which a plaintiff had the temerity to

seek more in attorneys fees than it owed its counsel. In that case, the court held unequivocally,

following *Johnson*, that "In no event should the litigant be awarded a fee greater than he is

contractually bound to pay." *In re Energy Partners, Ltd.*, 422 B.R. 68, (Bankr. S.D. Tex. 2009)

(citations omitted).[2] Such a rule makes particular sense in a commercial case such as this, where

---

[2] Courts have created an exception to this rule for civil rights and other public impact cases,
which often are prosecuted by *pro bono* or public interest counsel. This exception arises out of
the strong public interest in such cases in encouraging counsel to focus on injunctive relief
(which benefits the public) rather than damages (which benefits only the plaintiffs). In such
cases, courts have declined to cap recoverable fees based on any contingency fee agreement.
*See Blanchard v. Bergeron*, 489 U.S. 87, 95-96 (1989) ("If a contingent-fee agreement were to
govern as a strict limitation on the award of attorney's fees, an undesirable emphasis might be
placed on the importance of the recovery of damages in civil rights litigations"). But that
exception has not been applied outside the civil rights/public impact arena. Moreover, even in

4

experienced counsel took the case knowing that the maximum judgment obtainable was the amount of the challenged $300,000 transfer, and that counsel's maximum fee was therefore capped at $100,000. Plaintiff is not entitled to seek a windfall on Mr. Korff's back that he never agreed to pay and that counsel never expected to receive.

After Defendant briefly raised this issue in a letter to the Court, Plaintiff's counsel responded only by pointing to the language of Section 276-a, which provides that any fee award "shall be without prejudice to any [fee] agreement . . . ." Oberdier Dec. Ex. A (Plaintiff's Letter to the Court dated February 4, 2011). But Section 276-a does not state that the Court's fee award shall be "without *regard*" to any fee agreement, only that it shall be "without *prejudice*." In other words, if the Court awards less than the amount of the fee agreement, counsel is not prejudiced from collecting the remaining amounts from their client, the Plaintiff. But that is a very different matter than claiming that Plaintiff can be reimbursed or more than he is obligated to pay. Nothing in the law provides for such an unjust result.

Even if the Court were to depart from the case law holding that Plaintiff's fee agreement caps any fee award, Plaintiff's fee agreement would still be the overriding factor in determining the reasonable amount of counsel's fees. As Plaintiff specifically concedes in its Motion, this Court is required to determine "what a paying client would be willing to pay" and to consider, among other factors, "whether the fee is fixed or contingent." *See* Pl. Mem. 11 (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The best measure of what a client "would" be willing to pay is what the client *did* agree to pay and what the Bankruptcy Court already approved as reasonable: a 33% contingency fee. No case law supports a fee award exceeding the Plaintiff's contractual fee obligation – let alone triple that amount.

---

the civil rights context, the existence of a contingency fee agreement is a significant factor to be considered in establishing the amount of recoverable attorneys fees. *Blanchard*, 489 U.S. at 93.

## II.   Plaintiff Is Barred By His Failure To Plead
        A Claim For Attorneys Fees In The Complaint

Plaintiff is not entitled to claim any attorneys fees, having failed to plead in his

Complaint any claim under Section 276-a or, indeed, any claim for attorneys fees at all. *See*

Oberdier Dec. Ex. B (Plaintiff's Complaint).  Plaintiff's request at the end of trial to amend his

complaint after he had already closed his case, on which the Court reserved judgment, came far

too late. *See* Oberdier Dec. Ex. C at 576-587.  Plaintiff's counsel implicitly recognized that

Plaintiff was required to claim attorneys fees in the Complaint, since she based her request to

amend the Complaint on the flat misrepresentation that Plaintiff had already sought attorneys

fees in the Wherefore Clause of the Complaint. *See* Oberdier Dec. Ex. C at 577:13-14

(Plaintiff's counsel misrepresents that attorneys fees are sought in the "Wherefore" clause).

In this District, in accordance with the general rule, attorneys fees are considered "special

damages" that must be specifically pleaded in the Complaint. *Bensen v. American Ultramar

Ltd.*, 1997 WL 317343 (S.D.N.Y. June 12, 1997) (defendants could not request prevailing party

fees under an English law claim when they failed to plead entitlement to such fees in their

answer to the complaint); *see also Howard v. Whiteside*, 2010 WL 5287468 (E.D.Mo. Dec. 17,

2010) (plaintiff could not amend complaint to include claims for attorneys fees and punitive

damages four months after deadline for amended pleadings, even though discovery was still

ongoing and trial was not imminent.); *In re American Cas. Co. v. City of Detroit*, 851 F.2d 794,

802-03 (6th Cir. 1988) (plaintiff not entitled to contractual attorneys fees that it failed to plead in

the complaint).  That rule should apply particularly where, as here, attorneys fees are sought

pursuant to a separate, unpleaded statutory provision.

While some courts in this District have also required a finding that the defendant was

prejudiced by plaintiff's failure to plead a claim for attorneys fees, Mr. Korff was plainly

prejudiced here.  Plaintiff's fee claim is no modest ancillary addition to the jury's verdict – it

more than doubles it. *See Atlantic Purchasers*, 705 F.2d 712 ("substantial increase in the defendant's potential ultimate liability" constitutes prejudice that will bar a belated assertion of an unpleaded claim). Mr. Korff's discovery and trial strategies would have been substantially altered by the knowledge that his potential liability was over double the amount actually sought in the Complaint. Among other things, Mr. Korff's trial strategy would likely have focused more attention on the element of "actual fraud" and the fact that Mr. Korff did not receive the transfer with actual intent to deceive Palermo's creditors, of whom Mr. Korff had no knowledge. *See* Oberdier Dec. ¶ 7. As it was, taking Plaintiff's complaint at face value, the element of actual fraud was superfluous, since Plaintiff was seeking the same recovery of $300,000 under the less stringent Sections 273-275 of the DCL, which do not require any finding of intent. As a result, Mr. Korff's trial team focused on demonstrating fair consideration for the $300,000 transfer, and did not emphasize the alternative argument that, even if the jury found that consideration was lacking, it should nevertheless find that Mr. Korff did not act with any intent to defraud. *Id.*

### III.    Plaintiff's Disbursements Are Unsupported

Plaintiff's claim for "disbursements" of $62,637.71 is wildly-inflated and unsupported by any citation to case law. This amount includes $33,395.48 in accountant consulting fees, for which Section 276-a provides no recovery. Moreover, Plaintiff's claim for $29,241.23 in costs and expenses includes thousands of dollars in meals and overtime charges, which it is inappropriate to pass onto Mr. Korff.

### IV.    Plaintiff's Fees Are Inflated

Even if the Court were to consider the reasonableness of Plaintiff's fees divorced from the considerations above, Plaintiff's fees would have to be substantially reduced. Defendant's trial team consisted of only two lawyers – one partner and one junior lawyer – and no paralegals. See Oberdier Dec. ¶ 8. While Plaintiff claims that Mr. Korff's retention of new counsel before trial forced Plaintiff to spend additional "substantial time and resources," Pl. Mem. 6-7, it is

difficult to understand how Mr. Korff's team of two lawyers forced Plaintiff to staff a total of *seven* lawyers (including two not-yet-admitted law clerks) and two paralegals. *See* Wright Dec. ¶ 8. That is excessive on its face.

Moreover, Mr. Korff's pre-trial objections were directed at Plaintiff's plain and indefensible violations of the Rules in an effort to obtain an unfair trial advantage. Once Mr. Korff objected, these tactics were either voluntarily abandoned by Plaintiff or rejected by the Court. For example, Plaintiff spent substantial time attempting o offer into evidence inadmissible deposition transcripts from other proceedings to which Mr. Korff was not a party – indisputably violating Fed.R.Evid. 804 and Fed.R.Civ.P. 32(a)(4). *See* Oberdier Dec. ¶ 3 & Ex. D. Plaintiff was forced to abandon these efforts after Mr. Korff objected. *Id.* The Court also rejected Plaintiff's improper attempts to admit into evidence Judge Hardin's decision denying Palermo's discharge – a proceeding to which Mr. Korff was not a party. *See* Oberdier Dec. ¶ 6 & Exs. D, E. Plaintiff also spent substantial time preparing the testimony of an expert accountant that Plaintiff had not identified as required by Fed.R.Civ.P. 26(a)(2). When Plaintiff then tried to claim this expert accountant was somehow a fact witness, this Court ordered Plaintiff to make him available for an eve-of-trial deposition, using up preparation time that Mr. Korff's new counsel desperately needed. *See* Oberdier Dec. ¶¶ 4-5. But after the accountant admitted in his deposition that he had no admissible first-hand knowledge whatsoever regarding the dispute, Plaintiff elected not to call him to testify at all. *Id.* Not only were these efforts frivolous, but Mr. Korff was forced to incur substantial time and expense refuting them. *See* Oberdier Dec. ¶¶ 3-6 & Exs. D, E. This warrants a substantial reduction in Plaintiff's attorneys fees.

Based on these objections, a deduction of at least $100,000 to Plaintiff's claimed fees is appropriate, if the Court does not deny them entirely or cap them based on Plaintiff's retention agreement.

## V.    This Court Should Reserve Judgment On Plaintiff's Application Pending A Decision On Mr. Korff's Motion For JNOV

At the close of Plaintiff's case, the Court expressed substantial doubts whether Plaintiff's evidence was sufficient to prove actual fraud, and reserved judgment on that issue. *See* Oberdier Dec. Ex. C at 576-587.   At the least, therefore, this Court should reserve judgment on Plaintiff's fee application – which, as Plaintiff concedes, is sustainable only because of the jury's finding of actual fraud – pending Mr. Korff's forthcoming motion for JNOV,  due on or before March 17, 2011.

At trial, Plaintiff presented absolutely no evidence that the challenged transfer was "received by [Mr. Korff] with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors," as required by Section 276-a.  The Second Circuit has set a very high bar for finding actual fraud against a transferee.  The Second Circuit has held insufficient to state a claim under Sections 276 or 276-a, for example, allegations that a lender that uncovered the debtors' actual fraudulent financial scheme and quietly worked with them to find replacement financing to retire the lender's loans, knowing that the debtors would obtain such financing by defrauding additional unsuspecting creditors and even providing the necessary written consent for such financing.  *Sharp*, 403 F.3d 43; *see also Carey v. Crescenzi*, 923 F.2d 18, 21-22 (2d Cir. 1991) (specific finding of actual fraud on both the part of transferor and transferee is necessary to sustain an award of attorneys fees).  Indeed, a transferee's "bad faith," *or even actual knowledge of the transferor's fraudulent intent*, is insufficient:  the transferee himself must have acted with actual intent to defraud the creditors.

9

*Ostashko v. Ostashko*, 2002 WL 32068357 at *27 (E.D.N.Y. Dec. 12, 2001), *aff'd*, 79 Fed.Appx. 492, 2003 WL 22477929 (2d Cir. 2003).

The jury's finding of actual fraud against Mr. Korff must therefore be set aside for two reasons: First, Plaintiff did not offer any evidence to demonstrate, by clear and convincing evidence or otherwise, that Mr. Korff had any actual intent to defraud. Plaintiff presented no evidence even that Mr. Korff ***knew*** about Palermo's creditors, the judgments against him, or his alleged efforts to evade them. Plaintiff's theory of the case was that Palermo decided to fraudulently convey assets to Mr. Korff and other of Palermo's business counterparts upon having been served with a restraining notice by his principal creditor, Doubet LLC, in February 2003. *See* Oberdier Dec. Ex. C at 115:21 – 117:1 (Plaintiff's opening statement). But Plaintiff never produced any evidence whatsoever that Mr. Korff even knew about the Palermo's debts to Doubet or about the restraining notice. Rather, the undisputed testimony was that Mr. Palermo never told Mr. Korff about Doubet's judgments against him, let alone about the restraining notice. *See id.* at 331:16-25. Doubet did not serve the restraining notice on Mr. Korff. *See id.* at 228:15 – 233:23; Oberdier Dec. Exs. F, G (Plaintiff's Trial Exhibits 43 & 44).[3]

Second, the Court did not instruct the jury that it had to find that Mr. Korff had actual intent to defraud, only that Mr. Korff "***knew or should of known*** from the facts and

---

[3] For what it is worth, Plaintiff's failure to offer any evidence of Mr. Korff's knowledge or intent was not a product of misguided or sloppy trial strategy – there simply is no such evidence. In Palermo's underlying bankruptcy proceedings and the non-dischargeability proceeding brought by Doubet, many tens of thousands of documents were produced by the parties as well as subpoenaed non-parties, including all Palermo's business counterparts who were accused of facilitating his scheme to evade his creditors. *See* Oberdier Dec. ¶¶ 9-11. Each of these parties was extensively deposed, plus Palermo and Doubet's principal testified at trial. In that entire, extensive documentary and testimonial record, there was not even a single scrap of evidence suggesting that Mr. Korff had any knowledge of Doubet, its judgments against Palermo, the restraining notice, Palermo's creditors generally, or Palermo's alleged scheme to evade paying Doubet. Without any knowledge of these matters, Mr. Korff simply could not have possibly had the requisite intent to defraud Doubet, which the law plainly requires.

circumstances surrounding the transaction *that Mr. Palermo had the actual intent*" to defraud. Oberdier Dec. Ex. C at 696-698.  This instruction does not comport with the Second Circuit's requirement for a finding of actual intent by Mr. Korff – knowledge or constructive knowledge of Mr. Palermo's intent is insufficient as a matter of law.  Indeed, this instruction permitted the jury to find precisely the sort of knowledge of Mr. Palermo's intent that the Court in *Ostashko* explicitly rejected as insufficient.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion in its entirety.  Alternatively, this Court should reserve judgment on Plaintiff's fee application pending disposition of Mr. Korff's forthcoming motion for JNOV and/or new trial.

Dated: New York, New York
     February 18, 2011

Respectfully submitted,

Carl W. Oberdier (CO-4150)
coberdier@schiffhardin.com
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

Andrea Marcus (AM-1994)
Andrea.marcus@gmail.com
c/o Arc Development LLC
250 Park Avenue, Suite 501
New York, New York 10177
Telephone: 203-767-2580
Facsimile: (212) 702-5807

*Counsel for Defendant Joseph Korff*