UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| DAVID R. KITTAY, Plaintiff, -v- JOSEPH KORFF, Defendant. | Case No. 08 CV 7421 (RPP) |
|---|---|

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Carl W. Oberdier (CO-4150)
coberdier@schiffhardin.com
Kellen G. Ressmeyer
kressmeyer@schiffhardin.com
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

Andrea Marcus (AM-1994)
Andrea.marcus@gmail.com
c/o Arc Development LLC
250 Park Avenue, Suite 501
New York, New York 10177
Telephone: 203-767-2580
Facsimile: (212) 702-5807

*Counsel for Defendant Joseph Korff*

# TABLE OF CONTENTS

I. LACK OF FAIR CONSIDERATION WAS NOT SUPPORTED BY THE EVIDENCE .......... 1

A. Fair Consideration Exists As A Matter Of Law .......... 1

B. Plaintiff Provided No Evidence Disproving Fair Consideration .......... 2

C. Plaintiff bears the Burden of Proving Lack Of Consideration .......... 3

II. KORFF'S 2004 TAX RETURN DOES NOT SUPPORT THE JURY'S VERDICT .......... 4

A. Mr. Korff's Tax Return Is Not Probative .......... 4

B. Plaintiff Submitted No Evidence That Mr. Korff Improperly Recorded the Transfer .......... 6

III. NEITHER THE DEBTOR'S NOR MR. KORFF'S ACTUAL INTENT TO DEFRAUD WAS SUPPORTED BY THE EVIDENCE .......... 7

A. Plaintiff Did Not Demonstrate The Debtor's Actual Intent To Defraud With Respect To The 2003 Agreement .......... 7

B. Plaintiff Offered No Evidence Of Mr. Korff's Actual Intent To Defraud .......... 8

IV. THE COURT'S JURY INSTRUCTIONS WERE IMPROPER .......... 9

A. Mr. Korff Preserved His Right to a DCL § 278 Defense .......... 9

B. Mr. Korff Preserved His Right to an Alter Ego Defense .......... 10

C. Mr. Korff Preserved His Right to a Proper Actual Fraud Instruction .......... 10

**TABLE OF AUTHORITIES**

Cases

*ACLI Gov't Sec., Inc. v. Rhoades*,
653 F. Supp. 1388 (S.D.N.Y. 1987) .......... 4

*Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*,
569 F.2d 181 (2d Cir.1977) .......... 7

*Carey v. Crescenzi*,
923 F.2d 18 (2d Cir. 1991) .......... 8

*Chan v. Hartford Life Ins. Co.*,
2004 WL 2002988 (S.D.N.Y. Sept. 8, 2004) .......... 5

*Chemtex LLC v. St. Anthony Enters, Inc.*,
490 F. Supp. 2d 536 (S.D.N.Y. 2007) .......... 10

*Citibank, N.A. v. Benedict*,
2000 WL 322785 (S.D.N.Y. March 28, 2000) .......... 5, 7

*Lippe v. Bairno Corp.*,
249 F. Supp. 2d 357 (S.D.N.Y. 2003) .......... 7

*Dixie Yarns v. Forman*,
906 F.Supp. 929 (S.D.N.Y. 1995) .......... 3

*Hassett v. Goetzmann*,
10 F. Supp. 2d 181 (N.D.N.Y. 1998) .......... 7

*In re Allou Distributors, Inc.*,
404 B.R. 710 (E.D.N.Y. 2009) .......... 4

*In re Marwaha*,
2010 WL 2464583 (Sup. Ct. Monroe Cty. 2010) .......... 2

*In re Sharp*,
281 B.R. 506 (E.D.N.Y 2002) .......... 7

*In re Teligent, Inc.*,
358 B.R. 45 (Bankr. S.D.N.Y. 2006) .......... 4

*Mahoney-Buntzman v. Buntzman*,
12 N.Y.3d 415 (2009) .......... 5

*Meyer v. Ins. Co. of Am.*,
1998 WL 709854 (S.D.N.Y. Oct. 9, 1998) .......... 5

*MFS/SUN Trust High Yield Series v. Van Dusen Airport Series Co,*
910 F. Supp. 913 (S.D.N.Y. 1995) .......... 7

*Nay v. Curley,*
113 N.Y. 575 (1889) .......... 2

*New York Dist. Council of Carpenters Pension Fund. v. KW Const, Inc.,*
2008 WL 2115225 (S.D.N.Y. May 16, 2008) .......... 7

*Ostashko v. Ostashko,*
2002 WL 32068357 (E.D.N.Y. Dec. 12, 2001), aff'd, 79 Fed. Appx. 492 (2d Cir. 2003) .......... 8

*Petersen v. Vallenzano,*
849 F.Supp. 228 (S.D.N.Y. 1994) .......... 3

*Polkowski v. Mela,*
532 N.Y.S.2d 159 (2d Dept. 1988) .......... 6

*Scherer v. City Of New York,*
2007 WL 2710100 *8 n.3 (S.D.N.Y. 2007) .......... 9

*Silverman v. Actrade Techs.,*
337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) .......... 7

*Sklaroff v. Rosenberg,*
125 F. Supp. 2d 67 (S.D.N.Y. 1995) .......... 3

*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Center Prop., LLC,*
375 F. Supp. 2d 238 (S.D.N.Y. 2005) .......... 10

*Standard Bldg. Supply Corp. v. Hotel Abbey Holding Corp.,*
263 N.Y.S.2d 596 (2d Dep't 1965) .......... 2

*U.S. v. McCombs,*
30 F.3d 310 (2d Cir. 1994) .......... 4

## Statutes

McKinney's Statutes § 94 .......... 10

## Rules

Fed.R.Civ.P. 51(d) .......... 9

**Other Authorities**

9C Am. Jur. 2d Bankruptcy § 2231 .......... 7

13 Am. Jur. Trials 1 §§ 67-69 .......... 6

37 C.J.S. FRAUDULENT CONVEYANCES § 537 .......... 7

Defendant Joseph Korff respectfully submits this reply memorandum of law in support of his motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial.

## I. LACK OF FAIR CONSIDERATION WAS NOT SUPPORTED BY THE EVIDENCE[1]

### A. FAIR CONSIDERATION EXISTS AS A MATTER OF LAW

To disguise his failure to disprove fair consideration, Plaintiff weaves a speculative, unsupported fairy tale. In Plaintiff's yarn, there was no contemporaneous documentary evidence of the antecedent debt owed by the Debtor to Mr. Korff. Instead, Plaintiff contends that the "***only 'records' of [antecedent debt] were prepared solely for trial***." Memorandum Of Law In Opposition To Defendant's Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial ("Opp.") 7. Although Mr. Korff submitted a summary exhibit of his loans to Debtor and his entities (DX T), that exhibit was faithfully drawn from Mr. Korff's actual checks and wire transfers, several of which were labeled "***advances***," and contemporaneous ledger entries showing each of these amounts "***due from***" the Debtor and his entities—all entered into evidence. *See* Dec. Ex. C (PX-75, at 88, 89, 119; DX-R, at 18); Ex. A: 474–482, 484-491, 540-43.[2]

Indeed, although the $268,000 in antecedent debt that Mr. Korff proved at trial was sufficient to support the $300,000 Transfer, *see* Mem. 6, 9-10, the actual amount owed by the Debtor was, in fact, in excess of $300,000. Mr. Korff's calculation of the debt at trial overlooked an additional $15,000 loan to the Debtor in 1999, which was entered into evidence. *See* Reply Declaration of Carl W. Oberdier ("Rep. Dec.") Ex. A.[3]

---

[1] Capitalized terms shall have the same definitions as in the Memorandum Of Law In Support Of Defendant's Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial ("Mem.").

[2] This evidence of antecedent debt did not include the value of Mr. Korff's consulting services, which both Mr. Korff and the Debtor testified were sufficiently valuable to support the Transfer independently. *See* Dec. Ex. A: 224-227; 386-389.

[3] $15,000 plus simple interest at 25% for four years and seven months equals $32,187.50. This amount, added to the already-proved antecedent debt of $268,000, equals $300,187.50.

As a matter of well-settled New York law, this evidence required the jury to find that Mr. Korff's checks and wire transfers to the Debtor were loans. New York ***presumes*** that checks and wire transfers are loans where the payee (here, the Debtor) admits that such transfers were not payments of preexisting debts owed to him. *Nay v. Curley*, 113 N.Y. 575 (1889) (evidence of a check from the plaintiff to the defendant, plus the defendant's testimony that the plaintiff did not owe him a debt, constituted dispositive evidence that the check was a loan); *In re Marwaha*, 2010 WL 2464583 (Sup. Ct. Monroe Cty. 2010) ("evidence of delivery of the funds and proof that there was no pre-existing debt establishes prima facie a loan"); *Standard Bldg. Supply Corp. v. Hotel Abbey Holding Corp.*, 263 N.Y.S.2d 596 (2d Dep't 1965) (same). Plaintiff's speculative theory that the Transfer "was the price Korff paid to remain in good stead with the Debtor," Opp. 3, has no evidentiary support and is presumed untrue by law. "The law does not presume a gift." *Nay*, 113 N.Y. at 577; *Marwaha*, 2010 WL 2464583. (same).

Thus, the question is not, as Plaintiff would have it, whether Mr. Korff's loans to the Debtor were formalized in written loan agreements. Courts uphold unwritten loan agreements, even where one of the parties to the loan disputes it. *See, e.g.*, *Nay*, 113 N.Y. 575; *In re Marwaha*, 2010 WL 2464583; Tr. 690 (Court instructs the jury that oral agreements are enforceable). The question is how the extensive documentary and testimonial evidence of antecedent debt that ***did*** exist could be ignored?

**B. <u>PLAINTIFF PROVIDED NO EVIDENCE DISPROVING FAIR CONSIDERATION</u>**

In the absence of any evidence disproving fair consideration, the Plaintiff makes it up. For example, Plaintiff falsely contends that the Debtor and Mr. Korff gave materially different accounts of the consideration for the $300,000 Transfer – that Mr. Palermo testified the Transfer was "***entirely***" on account of Mr. Korff's consulting services in the Columbia Transaction, while Mr. Korff testified it was in exchange for forgiveness of nearly $300,000 of antecedent debt.

Opp. 6-7.[4] But both the Debtor and Mr. Korff testified that ***both*** the services and debt forgiveness were consideration for the Transfer, either of which was sufficient to support the Transfer by itself. *See*, *e.g*., Dec. Ex. A: 220:2-9, 224:14-227:11; 386:15-389:9; 391:4–20, 543:23–544:2 (debt forgiveness); 224:14-227:11; 386:15-389:9; E-H (consulting services).

Plaintiff's cited cases reveal the aberrance of the jury's verdict– in none of these cases, nor any other, did a court ignore credible documentary evidence of a reasonably-equivalent antecedent debt. In *Petersen v. Vallenzano*, 849 F.Supp. 228, 231-32 (S.D.N.Y. 1994) (Sweet, J.), defendant presented "no" evidence of antecedent debt, and the Court specifically suggested that "cancelled checks or ledgers" would have been sufficient had they been made out to the debtor. In *Dixie Yarns v. Forman*, 906 F.Supp. 929, 932-33, 936-37 (S.D.N.Y. 1995), the Court applied the narrow exception (applicable only to corporate insiders) to the rule that repayment of antecedent debt always constitutes fair consideration, without regard to intent. *Id.* at 937 ("[R]epayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor." (citation omitted) (emphasis in original)). In *Sklaroff v. Rosenberg*, 125 F. Supp. 2d 67, 73 (S.D.N.Y. 1995), the Court found that an $855,000 payment in exchange for release of a $4.3 million loan was not fair consideration. None of these cases resembles this one, in which there was unrebutted documentary and testimonial evidence establishing antecedent debt equivalent to the Transfer and undisputed testimony of additional consideration in the form of consulting services.

## C. Plaintiff Bears the Burden of Proving Lack Of Consideration

The Second Circuit slammed the door shut on Plaintiff's attempt to shift the burden of

---

[4] Plaintiff also falsely contends that Mr. Korff testified in a 2006 deposition that he had not forgiven the Debtor's antecedent debts in exchange for the Transfer. Opp. 8. In fact, Mr. Korff testified only that the Debtor's obligations incurred ***subsequent*** to the Transfer were outstanding. These included the post-Transfer South Boston transaction. Rep. Dec. Ex. B: 419-21.

proof of fair consideration in *U.S. v. McCombs*, 30 F.3d 310, 323-24 (2d Cir. 1994) (district court erred in shifting burden of proving fair consideration to defendants, even though the transfer was between family members). Plaintiff relies exclusively on a pre-*McCombs* case, *ACLI Gov't Sec., Inc. v. Rhoades*, 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987), which *McCombs* declined to follow and limited to its facts. 30 F.3d at 324.

*McCombs* reaffirmed that the "burden of proving the lack of fair consideration [rests] upon the party challenging the conveyance." 30 F.3d at 324 (internal citation omitted). It recognized only a narrow exception where the "evidentiary facts as to the nature and value of the consideration are . . . ***exclusively*** within the control of the transferee, and the transfer was "clandestine" and intrafamilial *Id.* 324-25 (emphasis added). Here, however, Plaintiff has complete possession of the Debtor's files, books and records and offered his testimony at trial. Rep. Dec. Ex. B: 265-266. Because Plaintiff has access to evidence regarding the "specific value and nature of the consideration," the burden of proof remains on him. 30 F.3d at 324-25.[5]

## II. KORFF'S 2004 TAX RETURN DOES NOT SUPPORT THE JURY'S VERDICT

### A. MR. KORFF'S TAX RETURN IS NOT PROBATIVE

Plaintiff's case hangs by the slimmest of reeds: Mr. Korff's 2004 tax return. Like a scratched vinyl record, Plaintiff keeps skipping back to Mr. Korff's tax return, arguing variously that it proves lack of fair consideration, lack of good faith, and actual intent to defraud. Opp. 1, 8, 14, 15, 16, 19-20. But the defendant-transferee's tax returns are ***irrelevant*** both as to the nature and value of the consideration given for the transfer and the transferee's intent. *See*, *e.g.*, *In re Teligent, Inc.*, 358 B.R. 45, 61 (Bankr. S.D.N.Y. 2006) (Bernstein, C.J.) ("***it does not matter how***

---

[5] Indeed, even in rare instances where evidence regarding consideration is exclusively in the transferee's possession, *McCombs* permits shifting only of the burden of ***coming forward*** with evidence – not the ultimate burden of ***persuasion***. *McCombs,* at 325-26*; accord In re Allou Distributors, Inc.*, 404 B.R. 710, 726 (E.D.N.Y. 2009) ("The ***ultimate*** burden of proof remains with the Trustee[.]" (emphasis added)).

***[defendant] treated the various forms of consideration that he received for federal (or state) income tax purposes***. What matters is the value of the interest in property that [debtor] transferred and whether it received [reasonably equivalent value] in exchange for that transfer." (emphasis added)).

Plaintiff cites no case in which a Court has found a failure to record income probative of the nature of a transaction. Rather, he cites only cases in which a taxpayer has been bound by specific, intentional, affirmative statements from which the taxpayer derived a financial benefit. *See Meyer v. Ins. Co. of Am.*, 1998 WL 709854 (S.D.N.Y. Oct. 9, 1998) (taxpayer who took business expense deductions swearing she "engaged in the business of options, commodities and futures trading" "full-time" estopped from claim of complete disability in action for insurance benefits); *Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415, 420, 422 (2009) (taxpayer who reported funds as "business income" could not later claim they were funds from sale of non-business property). This Court has specifically limited the *Meyer* line of cases to explicit, affirmative statements – refusing to extend them to the reporting or non-reporting of income. *Chan v. Hartford Life Ins. Co.*, 2004 WL 2002988 *6-7 (S.D.N.Y. Sept. 8, 2004) (*Meyer* does not apply to non-reporting of income).

Nor is Mr. Korff's tax return probative of bad faith or intent to defraud. *See* Opp. 15, 19-20. For this, Plaintiff cites only a case in which the ***transferor*** (not the transferee) failed to pay ***real estate*** transfer taxes (not income tax) on a transfer of property for ***zero consideration***. *Citibank, N.A. v. Benedict*, 2000 WL 322785 at *11 (S.D.N.Y. March 28, 2000). The Court made clear that it was the transfer for no consideration, not the tax return *per se*, that was fraudulent. Indeed, the Court relied solely on a similar New York case that cited only the lack of consideration on a transfer tax return as evidence of fraud – not the failure to file a tax return. *Polkowski v.*

*Mela*, 532 N.Y.S.2d 159 (2d Dept. 1988).[6]

## B. PLAINTIFF SUBMITTED NO EVIDENCE THAT MR. KORFF IMPROPERLY RECORDED THE TRANSFER

Even if Mr. Korff's tax return were probative, Plaintiff failed to introduce evidence sufficient to allow the jury to draw any conclusions. The proper treatment of income on a tax return requires expert testimony. *See* 13 AM. JUR. TRIALS 1 §§ 67-69. Plaintiff offered no such testimony or evidence, but rather invited the jury to speculate that the tax return did not properly record Mr. Korff's fee and interest income from the Transfer. *See* Rep. Dec. Ex. B: 670-71.

But the evidence showed the contrary. Mr. Korff turned over all relevant documents regarding the $300,000 Transfer, including his general ledgers, to his accountant and tax preparer. Rep. Dec. Ex. B: 433. He relied on his accountant to record the Transfer. *Id.*: 423-24, 431-32. Mr. Korff had substantial losses in 2004 such that the fee and interest income from the Transfer would not have affected his tax liability, rendering such income immaterial. *Id.*: 538-39.

And Plaintiff offered no evidence to rebut Mr. Korff's testimony that it was reasonable to offset his income from the Transfer against the Debtor's misappropriation of Mr. Korff's funds in the subsequent "South Boston" transaction. Rep. Dec. Ex. B: 440-41. Nor did Plaintiff offer evidence regarding whether Mr. Korff recorded the Transfer as a 2003 tax event, in line with the defense's view of the transaction. *Id*: 3-6. The jury had no basis to conclude that the Transfer should have been reported on Mr. Korff's 2004 tax return or that his tax return diminished his credibility.

---

[6] New York real estate transfer tax forms require a statement of consideration or the lack thereof.

## III. NEITHER THE DEBTOR'S NOR MR. KORFF'S ACTUAL INTENT TO DEFRAUD WAS SUPPORTED BY THE EVIDENCE

### A. PLAINTIFF DID NOT DEMONSTRATE THE DEBTOR'S ACTUAL INTENT TO DEFRAUD WITH RESPECT TO THE 2003 AGREEMENT

Plaintiff offered no evidence to support a finding of actual intent to defraud, either as against the Debtor or as against Mr. Korff. Intent to defraud must be proven by clear and convincing evidence to sustain a claim under Section 276 or to bar a defense under Section 278(2). *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 186 (2d Cir.1977). Plaintiff cites no authority in support of a finding of fraud on similar facts.[7]

Plaintiff prefers the formulation of the badges of fraud of an obscure bankruptcy case, *Silverman v. Actrade Techs.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005), over that of this Court, *Lippe v. Bairno Corp.*, 249 F. Supp. 2d 357, 377-78 (S.D.N.Y. 2003) (Chin, J.); *see also* Mem. 14-18. But under either variation, the evidence is insufficient to sustain a finding of actual fraud:

- Plaintiff made no showing of an "unconscionable discrepancy" between the value transferred and the consideration received. Mem. 17. Plaintiff cites non-authoritative cases, *Hassett v. Goetzmann*, 10 F. Supp. 2d 181, 187-88 (N.D.N.Y. 1998) (consideration ***less than one-sixth*** value of transfer) and *Citibank*, 2000 WL 322785 (no consideration). But Plaintiff cites no case where Plaintiff ***conceded*** consideration of one-fourth of the transfer and undisputed, documentary evidence proved the rest.

- Plaintiff argues that fraudulent intent can be inferred from Mr. Korff's 2004 tax return, but the law is to the contrary. *See* Section II, *supra*.

- Plaintiff misconceives the relevance of the "Debtor's financial condition," contending that the Debtor's preexisting insolvency satisfies this badge *per se*. But the question is whether the Transfer ***worsened*** the Debtor's financial condition. Because Mr. Korff provided fair consideration for the Transfer, there was no impact on the Debtor's financial condition. *In re Sharp*, 281 B.R. 506, 522 (E.D.N.Y 2002) (transfer to satisfy

---

[7] The badges of fraud must be based on "objective facts," *New York Dist. Council of Carpenters Pension Fund. v. KW Const, Inc.*, 2008 WL 2115225 (S.D.N.Y. May 16, 2008), which give rise to a "clear inference of fraud." 9C Am. Jur. 2d Bankruptcy § 2231. And the law requires that "several indicia of fraud must be shown." 37 C.J.S. FRAUDULENT CONVEYANCES § 53; *accord MFS/SUN Trust High Yield Series v. Van Dusen Airport Series Co*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (no actual intent even though consideration was lacking and the transferor retained control over the transferred asset).

preexisting debt did not "adversely affect [the transferor's] financial condition or its ability to repay its other creditors").

- Plaintiff provided no evidence of suspicious "chronology" indicative of fraud. Plaintiff points only to the execution of the 2003 Agreement "just months" (***eight*** months) after the issuance of Doubet's Restraining Notice. While Plaintiff dramatically describes the Debtor's "series of transactions" "with creditors closing in," Plaintiff offered no evidence of creditors closing in, just Doubet's Restraining Notice, and no "series of transactions," just the 2003 Agreement.

- Plaintiff points to nothing "questionable" or "not in the usual course of business" regarding the Transfer. Plaintiff merely sings the same chorus regarding the lack of signed loan agreements (despite the irrefutable documentary evidence), but does not dispute that it was unremarkable that the Debtor repaid these loans with an assignment of fees.

- The Transfer bore no element of secrecy: the 2003 Agreement was the subject of weeks of negotiation between Columbia, 455 CPW LLC, and their commercial counsel. *Lippe*, at 384 (open, public nature of the transfer weighed against fraud).

- No Court has ever held that a mere "friendship" or "business relationship" such as existed between Mr. Korff and the Debtor constitutes a "close relationship" that would indicate fraud. Mem. 17-18 (collecting cases).

In sum, no reasonable jury could have weighed the objective evidence and found clear and convincing evidence of actual intent to defraud. Plaintiff's inability to establish most, if not all, of the badges of fraud "weighs against a finding of fraud." *Lippe*, at 382-84.

### B. PLAINTIFF OFFERED NO EVIDENCE OF MR. KORFF'S ACTUAL INTENT TO DEFRAUD

No court has ***ever*** allowed a claim under Section 276 against a transferee absent a finding that the transferee had actual intent to defraud. *See* Mem. 12 n.4. In order to find that the transferee had actual intent to defraud, there must be specific evidence that the transferee "was aware of and participated in the actual fraud." *Carey v. Crescenzi*, 923 F.2d 18, 20 (2d Cir. 1991); *Ostashko v. Ostashko*, 2002 WL 32068357 at *27 (E.D.N.Y. Dec. 12, 2001), *aff'd*, 79 Fed. Appx. 492 (2d Cir. 2003) (transferee had no actual intent to defraud even though he acted in "***bad faith***" and "***was aware of [the transferor's] intent to defraud***." (emphasis added)). There was no such evidence.

## IV. THE COURT'S JURY INSTRUCTIONS WERE IMPROPER

Plaintiff offers no substantive contest to the erroneous and prejudicial nature of the instructions. Rather, he contends that Mr. Korff failed to preserve his objections, even though Mr. Korff argued each objection to the Court, which rejected them on the record. Plaintiff relies exclusively on old case law applying FRCP 51(d) before its 2003 Amendment removing the requirement that a party must object "before the jury retires to consider its verdict." Now, FRCP 51(d) requires only that a party "properly object" at any time, and specifically provides that a party's proposed jury instructions will preserve the party's objection so long as the court specifically rejects such instructions on the record, or the party otherwise objects. *See Scherer v. City of New York*, 2007 WL 2710100 *8 n.3 (S.D.N.Y. 2007) (Rule 51(d)(1)(B) "establishes authority to review the failure to grant a timely request [for instruction], despite a failure to add an objection, when the court has made a definitive ruling on the record rejecting the request.").

### A. MR. KORFF PRESERVED HIS RIGHT TO A DCL § 278 DEFENSE

Mr. Korff requested a DCL § 278 instruction on multiple occasions. Mr. Korff requested a partial consideration instruction in his proposed jury instructions. *See* Rep. Dec. Ex. C. He then argued his right to such a charge in two separate colloquies with the Court. Rep. Dec. Ex. B: 592-595, 598-602. Indeed, Plaintiff ***concedes*** that this "Court[ made a] prior determination that DCL § 278 does not apply to the instant circumstances." Opp. 22 n.20.

Mr. Korff was entitled to an instruction pursuant to § 278. *See* Mem. 19-22. While Plaintiff contends, without citation to any authority, that "DCL § 278(2) is inapplicable where money is transferred for services or not pursuant to a written agreement," Opp. 23 n.20, he cites no authority empowering this court to read material limitations into the statutory text.[8] And the

---

[8] Notably, Plaintiff's defense of this Court's non-instruction is materially different than at trial. *Compare* Rep. Dec. Ex. B: 600 ("[DCL §] 278 is tangible items – securities, assets, real property – ***not money***" (emphasis added)) *with* Opp. 22 n. 20

laws governing statutory construction forbid it. McKinney's Statutes § 94 cmt. ("[N]ew language cannot be imported into a statute to give it a meaning not otherwise found therein.").[9]

### B. MR. KORFF PRESERVED HIS RIGHT TO AN ALTER EGO DEFENSE

Mr. Korff also preserved his right to an instruction requiring the jury to determine whether BTI was an alter ego of the Debtor. *Compare SR Int'l Bus. Ins. Co., Ltd. v. World Trade Center Prop., LLC*, 375 F. Supp. 2d 238, 243 (S.D.N.Y. 2005) (alter-ego requires a showing of "operat[ion] as a single entity" and that an "overall element of injustice or unfairness [was] present") *with e.g.*, Rep. Dec. Ex. C ("Debtor & Creditor Law 273-276 Alter Ego"); Rep. Dec. Ex. B: 608. Indeed, as Plaintiff concedes, "[Mr.] Korff requested the use of the word 'control' and the Court denied such request." Opp. 25.

### C. MR. KORFF PRESERVED HIS RIGHT TO A PROPER ACTUAL FRAUD INSTRUCTION

Plaintiff fails to offer any substantive defense of this Court's failure to instruct the jury regarding Mr. Korff's alleged actual intent to defraud. Plaintiff's contention that "constructive knowledge" is sufficient to satisfy the "actual intent" element of Sections 276 and 276-a has been explicitly rejected by the Second Circuit. *Carey*, 23 F.2d at 20 ("under § 276-a attorney's fees may not be awarded against a defendant, who is a grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud.").

---

("In *Chemtex LLC v. St. Anthony Enters, Inc.*, 490 F. Supp. 2d 536, 544, 45 (S.D.N.Y. 2007), the court applied the defense to a secured creditor who extended ***operating funds*** to the transferor." (emphasis added)).

[9] Mr. Korff certainly did not "withdraw" his request for a Section 278 instruction., *see* Opp. 9. Plaintiff misleadingly quotes out of context a brief colloquy with the Court, but the entire colloquy, as well as the actual revised instructions submitted by Mr. Korff, makes clear that Mr. Korff withdrew only his request for a "set-off" instruction regarding ***post***-Transfer obligations incurred by the Debtor, most notably in connection with the South Boston transaction. Mr. Korff always maintained his request for a "partial consideration" charge. *See*, Rep. Dec. Ex. C, Charge 18 ("Partial Consideration").

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment as a matter of law or, in the alternative, a new trial, should be granted.

Dated: New York, New York
May 2, 2011

Respectfully submitted,

Carl W. Oberdier (CO-4150)
Kellen G. Ressmeyer
coberdier@schiffhardin.com
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

Andrea Marcus (AM-1994)
Andrea.marcus@gmail.com
c/o Arc Development LLC
250 Park Avenue, Suite 501
New York, New York 10177
Telephone: 203-767-2580
Facsimile: (212) 702-5807

*Counsel for Defendant Joseph Korff*